Daniel W. Flynn *et al.*

*v.*

Mary Fogarty.

*Filed at Ottawa March 30, 1883.*

1. Death occasioned by intoxication—*suit by widow for injury in her means of support by the loss of her husband—grounds of action under Dram-shop act.* In a suit by a widow against a dram-shop keeper to recover for an alleged injury in the means of support of the plaintiff as the result of the death of her husband, occasioned by his being in a state of intoxication produced by the drinking of intoxicating liquors furnished to him by the defendant, to make out a case under the statute it is necessary to establish, first, that the defendant sold or gave to the plaintiff's husband intoxicating liquors; second, that the giving or selling of such liquors caused, in whole or in part, his intoxication; third, that such intoxication caused his death; and fourth, that by reason of his death the plaintiff was injured in her means of support.

2. Same—*inference of injury to means of support—shifting the burden of proof.* If, upon the trial in such a suit, the death of the plaintiff's husband is shown, and that his death was occasioned by intoxication produced by liquors sold or given to him by the defendant, in the absence of any proof to the contrary the jury will be warranted in inferring therefrom an injury to the plaintiff's means of support. That will be sufficient to shift the burden of proof, and entitle the plaintiff to at least nominal damages.

3. SAME—*measure of damages—of evidence proper to be considered.* In such case, in order to ascertain the measure of the plaintiff's loss from the death of her husband, it is proper to show his age, what he himself had done in his lifetime, the character of his business, his habits of industry and thrift, income, and all that sort of thing, with a view of determining what he probably would have continued to do but for his death.

4. But what the widow may have done, or what expenditures she may have made, since his death, in respect to the business in which her husband had been engaged, would afford no ground of presumption as to what *he* would have done in the event he had lived. So where, in such a case, it appearing the plaintiff's husband was a farmer, the plaintiff was permitted to prove that since her husband's death she had expended considerable sums in ditching upon the farm, and having rails split, and fencing made, it was held that proof of such expenditures should not have been allowed, as it afforded no criterion by which to determine the extent to which the plaintiff's means of support had been permanently diminished by her husband's death.

5. The plaintiff was also permitted, in giving her testimony, to detail to the jury the inconveniences she had labored under since her husband's death,—how she had to go to town on cold days, and the fact of one of her girls having to work out, and, also, to speak of the mangled condition in which she found her husband shortly after the injury which was the immediate cause of his death; how she fainted away, and his dying remark to her, "Mary, I can't see you any longer,—I am getting blind." All this was improper, as having no bearing on the issue as to the extent of injury to the plaintiff's means of support by the death of her husband, and only calculated to enhance the damages through sympathy for the plaintiff and prejudice against the defendant.

6. EVIDENCE—*leading questions.* While it is conceded that leading questions may be propounded to a witness who is hostile to the party calling him, or is required to testify against his own interest, yet in the absence of any considerations of this character, as, where the witness is favorable to the party examining him, such a course of examination is not allowable.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. MCKENZIE & CALKINS, for the appellants.

Messrs. WILLOUGHBY & DAUGHERTY, and Mr. F. S. MURPHY, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action brought by Mary Fogarty, the appellee, in the Knox circuit court, under the 9th section of the Dramshop act, against the appellants, Daniel Flynn, Septimus Merrick, Gus Henderson, and others who are not parties to this appeal, to recover damages for the loss of her husband, John Fogarty, whose death, it is claimed, was caused by intoxicating liquors sold to him by the appellants. The cause was tried before the court and a jury, in the month of December, 1880, resulting in a verdict and judgment for the plaintiff for $1800, which was subsequently affirmed by the Appellate Court for the Second District, and the appellants bring the case here for review.

The evidence shows that the deceased was between forty and fifty years of age, in good health, and by occupation a farmer; that he was the head of a family, consisting of himself, wife, and eleven children, the oldest, a son, being between eighteen and twenty years of age; that on the morning of the 20th of October, 1879, he went to Galesburg by rail, and shortly after his arrival there commenced drinking intoxicating liquors, and continued to do so, off and on, during the day; that at, or shortly after, a quarter past six in the evening he left Galesburg for home, by way of the Chicago, Burlington and Quincy railway, in a state of intoxication; that he arrived at St. Augustine, his home station, not far from seven o'clock of the same evening; that in attempting to get off the train he fell from the platform between two cars, when the wheels of the rear one passed over both his legs, inflicting injuries from which he died the following morning. The evidence satisfactorily shows that the deceased drank intoxicating liquors at least three times during the day at Flynn & Merrick's saloon,—once in the forenoon and twice in the evening,—the last time being between four and five o'clock. It was also shown that the deceased took three

glasses of beer in the forenoon at Henderson's saloon, the exact time not being fixed. This was all the evidence tending to connect the defendants with the intoxication of the deceased.

Appellee bases her right of recovery upon the sole ground "she has been injured in her means of support." To make out a case, under the statute, it was necessary for her to satisfactorily establish, first, that the defendants sold or gave to the deceased intoxicating liquors; second, that the giving or selling of such liquors caused, in whole or in part, his intoxication; third, that such intoxication caused his death; and fourth, that by reason of his death the plaintiff was injured in her means of support. Whether these facts were sufficiently established on the trial is a matter with which we have no concern, except so far as it may be necessary to present our views upon certain questions of law arising on the record.

So far as Flynn and Merrick are concerned we are unable to say the jury erred in reaching the conclusion they did, but with respect to Henderson, to say the least of it, we regard it as highly improbable that the three glasses of beer drank by the deceased in the forenoon at his saloon could have, in any degree, contributed to the intoxication of the deceased at seven o'clock, or thereabouts, in the evening. There is no fact or circumstance tending to show that the deceased either drank at or was about Henderson's saloon in the afternoon of that day, nor is there any claim by counsel to that effect. Under these circumstances, therefore, it was but just, and highly important to the accused, that the law of the case should have been accurately stated to the jury, and strictly observed by the court in the admission or rejection of testimony.

On the trial of the cause, the court, at the instance of the plaintiff, gave to the jury, among others, the following instruction, to the giving of which the defendants, at the time, excepted:

"The court instructs the jury, for plaintiff, that if they believe, from the evidence, that John Fogarty, the husband of the plaintiff, came to his death on account of his intoxication, and that said intoxication was caused, wholly or in part, by intoxicating liquor sold or given to the said John Fogarty by the defendants, then the verdict of the jury should be for the plaintiff, with such damages as, in the judgment of the jury, from the evidence, the plaintiff is entitled to recover, not exceeding in the aggregate the sum of $10,000."

It is objected that this instruction wholly dispenses with all proof showing the plaintiff had been *injured in her* means of support by reason of the death of her husband, and that it, in effect, told the jury they might infer such injury from the mere fact of Fogarty's death,—and such, it must be conceded, is the purport of the instruction. Nevertheless, we think there was no substantial error in giving it. In the absence of any proof to the contrary, we think the jury were warranted in inferring an injury to the plaintiff's means of support by showing Fogarty's death, and that it was occasioned by intoxication produced by liquors sold or given to him by the defendants. This was sufficient to shift the burden of proof, and entitled the plaintiff to at least nominal damages.

It is also objected that appellee, while testifying as a witness in her own behalf, was asked by her counsel, against the objections of the defendants, the following question: "State if, during the year, you have been put to extraordinary expenses you would not have been put to if it was not for Fogarty's death." This question was clearly improper, both in form and substance. It was leading. It clearly suggested the answer desired, which is never permissible where the witness is favorable to the party examining him, as the plaintiff evidently was in this case.

But the matter elicited by the question was still more objectionable than the question itself. The witness, in re-

sponse, went on to state that she had expended during the year about $175 in ditching forty acres of land, having rails split, and in having fencing made. It was necessarily a matter of the purest conjecture whether the husband would have done all this work, or any part of it, with his own hands, had he been living, or, indeed, whether he would have had any of it done at all. Moreover, what the plaintiff saw proper to expend on the farm with a view of improving it and increasing its value, during a particular year, afforded no criterion whatever by which to determine the extent to which her means of support had been permanently diminished by her husband's death. Suppose she had doubled these expenses, or increased them ten fold, as she well might have done, would they still have furnished a rule for determining the extent of her loss? To permit evidence of this character to be received would place it in the power of every one thus circumstanced to manufacture evidence for the express purpose of enhancing the damages. It was highly proper to show what the deceased himself had done in his lifetime, the character of his business, his habits of industry and thrift, income, and all that sort of thing, with a view of determining what he probably would have done in the future had he not been killed. Could it have been known to a certainty what he would have accomplished but for his death, that would have furnished the exact measure of her loss; but as that could not be definitely ascertained, the next best thing was to show the aid and assistance he probably would have rendered her but for his death, and this could only be done by proving his age, physical condition, habits of industry, thrift, etc., as above indicated. What his widow herself had done after his decease, manifestly afforded no ground of presumption as to what *he* would have done in the event he had lived.

The plaintiff was also permitted to go on and detail to the jury the inconveniences she has labored under since her

husband's death,—how she had to go to town on cold days, and the fact of one of her girls having to work out, and, also, to speak of the mangled condition in which she found the deceased shortly after the injury; how she fainted away, and his dying remark to her, "Mary, I can't see you any longer,— I am getting blind." All this had not the slightest legitimate bearing upon the vital issue in the case,—namely, the extent to which the plaintiff had been injured in her means of support by the death of her husband. Its obvious effect was to unduly arouse the sympathies of the jury in favor of the plaintiff, and create a corresponding prejudice against the defendants. The calling out of such recitals before the jury is often but an artful device of ingenious counsel to divert the attention of the jury from the real issue, and increase the damages to an extent not warranted by the facts. In such cases it is the duty of the court, on its own motion, to interpose.

As this case will have to be reversed for the error indicated, and the cause retried, we deem it proper to say that we are of opinion the trial court gave plaintiff's counsel too much latitude in the examination of her witnesses. They seem to have been uniformly permitted to ask leading questions, without the slightest restriction, against the repeated objections of the defendants. While we concede the court may properly allow this where the witness is hostile to the party calling him, or is required to testify against his own interest, yet in the absence of any considerations of this character such a course of examination is in palpable violation of a well settled rule of law regulating the production of testimony, and is manifestly unjust to the opposite party. While we are of opinion that in some instances in the present case leading questions were properly allowed, yet we are equally clear that in other instances they were not, of which the above question to the plaintiff herself is an example. It is not necessary to go into further detail on this subject. What we have here said

is with a view of preventing a repetition of the same error on a second trial of the cause. Cases of this kind should be tried like all other cases,—each party should have the full benefit of all those wholesome rules of law regulating the trial of causes which are so essential to a fair and proper administration of justice.

For the errors indicated the judgment of the Appellate Court is reversed, and the cause remanded to that court with directions to reverse the judgment of the circuit court, and remand the cause for further proceedings in conformity with this opinion.

*Judgment reversed.*