EMIL WESTPHAL

V.

ALBERT AUSTIN, BY NEXT FRIEND.

*Dram-shops—Injury to Plaintiff's Means of Support—Evidence—Causation—Practice—Instructions.*

1.    In an action brought by a minor by next friend, under the Dram-shop Act, to recover for alleged injuries to plaintiff's means of support by reason

Westphal v. Austin.

of defendant's sales of intoxicating liquor to plaintiff's father, thereby causing the death of plaintiff's father, *held*, first, that the evidence failed to show that the death of plaintiff's father was caused by the sales of liquor shown, and second, that the evidence did not sufficiently show that plaintiff had suffered in his means of support through the death of his father.

2. Where the instructions complained of are not abstracted, this court will not consider the objections made thereto.

[Opinion filed May 21, 1891.] .

APPEAL from the Circuit Court of Whiteside County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. J. E. McPHERRAN, for appellant.

Mr. J. D. ANDREWS, for appellee.

UPTON, J. This is a suit under the Dram-shop Act, brought by appellee, a minor, by his next friend, against the appellant. The declaration contains two counts. The first count alleges that appellee was the son of one Martin V. Austin. That prior to January, 1880, the father had carried on and successfully conducted business at Morrison, in Whiteside county, and had furnished and until that time had provided for the appellee a comfortable support. That between the date last aforesaid and December, 1885, the time of his death, appellant sold Martin V. Austin intoxicating lquors at his saloon in Morrison, and thereby caused him to become a habitual drunkard and to squander his property, become impoverished and physically ruined, and unable to provide for the support of the appellee by means thereof, etc. The second count is in substance the same as the first, with the additional allegation that in consequence of appellant's wrongful sale of intoxicants to the father of appellee, he became diseased and disordered and from the effects thereof died, etc. In brief, appellee's claim for damages rests upon the allegation, first, that the appellant caused the father of appellee to become a habitual drunkard, thereby injuring appellee's means of support; and second, that by the same means appellant caused the father's death, and thereby injured his means of support.

A plea of the general issues was interposed, and joinder thereon. The case was heard in the trial court before a jury and a verdict returned for appellee in the sum of $300, upon which judgment was rendered, after overruling a motion for a new trial, and the case was brought to this court on appeal.

It is here objected on the part of appellant—first, that the trial court erred in giving certain instructions on behalf of appellee; second, that the trial court erred also in the exclusion of evidence offered by the appellant; and third, that the trial court committed further error in refusing a new trial on appellant's motion therefor, for the alleged cause that the evidence does not support the verdict.

First. As to the instructions complained of we need only say, that the instructions are not abstracted, and we are not required to look into the record to ascertain what they are. The rules of this court require that a complete abstract be made of that portion of the record, at least, upon which error is assigned, so that the court therefrom may see to what the objection is taken. Such was the holding of the Supreme Court under its rule of practice which was adopted by this court upon its organization, and since followed, and from which we do not at present feel at liberty to depart. Shackelford v. Bailey, 35 Ill. 388; Johnson v. Bantock, 38 Ill. 114; Israel v. Town of Whitehall, 2 Ill. App. 509; Hanchett v. Riverdale Drainage Co., 15 Ill. App. 65; Village of Chatsworth v. Ward, 10 Ill. App. 77.

Second. Upon careful examination we think the trial court committed no error in the exclusion of the evidence complained of as rejected.

Third. The important question in the case, as we regard it, remains to be considered, viz.: does the evidence support the verdict? It seems established by the evidence that at the time of his father's death, appellee was nearly eighteen years of age; that prior to the year 1880 the father had been engaged in farming. In that year he abandoned that pursuit, removed to the village of Morrison, and there engaged in the business of buying and selling stock. For some years before he discarded agricultural pursuits, the father had been accus-

tomed to drink intoxicating liquors to excess; but for how long a time prior thereto does not appear. It does appear that prior to 1880 the father had drank intoxicating liquors at the appellant's saloon on several occasions. Some time in the early part of the year 1882, appellee, having had some trouble with a servant of appellant in reference to his drinking, and of his being upon the public streets in an intoxicated condition, appellant, in the language of. the witness, placed Martin V. Austin upon the black list at his saloon, and from thence until his death in December, 1885, Austin neither obtained nor drank intoxicating liquors at appellant's saloon, with one exception of a single glass in December, 1882, as shown by the evidence, and as to that there is a sharp conflict in the evidence. It further appears that the father of appellee was well adapted to the business in which he was engaged, and that his habits of drinking were not observed to have had any marked or deleterious effect upon his capacity for business or in the amount of the business done prior to 1882. Some of the witnesses called for appellee, among whom were those who had been engaged as copartners with appellee's father until about one year prior to his death, testified in substance, that prior to 1882 his business habits were good. It appears that there was no change in the general health or appearance physically of the father of appellee from 1881 until just before his death, although for the last year in his life he was not engaged in business. Hannah M. Austin, the mother of appellee, testified that her husband, Martin V. Austin, died December 3, 1885, having been sick but six weeks preceding his death. That prior to the last year of her husband's life, the character of the support of his family was good, and that she and her husband kept house together from April 6, 1863, until his death. The physician who attended the father of appellee in his last sickness, testified that the father was afflicted with the dropsy, caused by a trouble of the liver; the disease of which he died was called scirrhosis of the liver. He lived about four weeks after the doctor commenced to treat him. The doctor had known the father since 1882, and had seen him intoxicated, and he thought his death was

caused by his general habits and the excessive use of alcoholic spirits. Upon cross-examination the doctor stated further that the disease of which the father died manifests itself when there is no drunkenness or drinking habit at all, in children of tender years, and in women. This dropsical condition is produced by the retarded action of the heart; any thing which retards the action of the heart would induce a dropsical condition; this dropsical effusion may be found in the system when there is no alcoholic poison or stimulant whatever present. The doctor further stated: "I do not swear that the cause of this man's death was the excessive use of liquors or alcoholic stimulants." In brief this was substantially the extent of the testimony offered by appellee upon the points now under consideration, and it was not strengthened by any evidence offered by the appellant upon these points.

In Flynn v. Fogarty, 106 Ill. 263, which was an action of the wife to recover for the death of her husband, under the statute now in question, it was there held that to entitle the plaintiff to recover it must be shown by the evidence, first, that the defendant sold or gave the intoxicating liquors which produced the effects complained of, to the person alleged to have become intoxicated thereby; second, that such liquor caused the intoxication complained of in whole or in part; third, that such intoxication caused his death; and fourth, that by reason thereof the plaintiff has been injured in his means of support.

It does not appear from the evidence of the appellee, with no contravening testimony, that the liquor sold to the father of appellee three years preceding his death, or at any other time, was in fact or legal presumption the proximate cause of the father's death. That cause is shown to have been a disease of the liver, induced by the retarded action of the heart, and not dependent upon the use of alcoholic stimulants, either in whole or in part. After a careful examination of all the facts and circumstances, as shown in the record before us, which we have carefully studied, we think the evidence and circumstances in evidence are entirely too remote, weak and

inconsequential to connect the appellant with the sale of intoxicating liquors to the father of appellee so as to charge the appellant, in a legal sense, with producing the habitual intoxication of the father of appellee as charged in the declaration, or which did, in fact, lead to cause the affection of the liver of which the father died, or cause his death.

The evidence fails to show in any manner to what extent, if any, the appellee was or could be injured in his means of support by the father's death, nor does the evidence or circumstances in evidence furnish any substantial data, fact, circumstance or legal hypothesis upon which to estimate damages to appellee, even if it be conceded that the father's death was caused by appellant, as alleged. Appellee at the time of his father's death was eighteen years of age, and presumably capable of supporting himself. Nothing appears in the evidence in this record that the appellee was receiving any support from the father at the time of his death, or that he was needful of any, aside from his own efforts. How, then, was appellee damnified, in a legal sense, by his father's death? It is insisted, however, that proof of the father's death, caused by the wrongful act of the appellant, warrants the legal inference of injury to the means of support to his minor children, and consequent damages to them therefor. If this contention was conceded for the sake of the argument, it could not extend beyond nominal damages, and serve to shift the burden of proof to the defense, as was held in Flynn v. Fogarty, *supra*. But that case was a suit by the wife for the loss of her husband, and clearly distinguishable from the case at bar; besides, it was expressly held in that case that such legal inference can not be indulged, except in those cases where it is shown—first, that the defendant sold or gave intoxicating liquor to the husband; second, that such liquors caused the intoxication complained of; and third, that such intoxication caused his death; neither of which two last named precedent facts, as we have seen, were shown in the case at bar, which we must regard as quite sufficient to answer this contention.

It is further claimed on the part of appellee that as the actual damages in this class of cases can not be shown with

certainty, it must be left to the jury to be determined by inferences, etc. Inferences from what, it may be asked? Most certainly from the facts and circumstances in evidence only, and in the case at bar the facts and circumstances from which to draw the inferences are wholly wanting.

The rule is clearly stated in the case last above cited. It is there said : " It was highly proper to show what the deceased himself had done in his lifetime, the character of his business, his habits of industry and thrift, income, and all that sort of thing, with a view of determining what he probably would have done in the future. Since it could not be known with certainty what he would in fact have done or accomplished but for his death, the next best thing was to show the aid and assistance he probably would have rendered but for his death. Measured by what he had done or rendered in his lifetime, that could only be done in the manner before indicated," etc.

The evidence in the record before us discloses the age of appellee at the time of his father's death, but whether he was a member of his father's family, in whole or in part supported by the father, or what aid or assistance, if any, he had received or was then receiving from his father, or what, if any, means the father possessed with which to support or aid the appellee, does not appear.

If we are correct in the premises stated, clearly there can be no recovery in the case at bar. Manifestly the evidence is not sufficient to support the verdict, and the Circuit Court erred in refusing a new trial and rendering judgment on the verdict. The judgment of the Circuit Court is therefore reversed, and the cause is remanded for further proceedings not inconsistent with the views herein above expressed.

*Reversed and remanded.*