## GUS KARAU

### v.

## LUVA ANN PEASE.

*Dram Shops—Loss of Support—Death of Plaintiff's Husband—Alleged to have been Caused by Drunkenness—Liquor Sold by Defendant—Whether Deceased and Companion, at the Time of his Death, were Drunk—Admission of Improper Evidence—Damages.*

1. In an action brought against the defendant under the Dram Shop Act, to recover damages for the death of plaintiff's husband, it being charged that defendant sold liquor to the deceased, whereby he became intoxicated and thereby lost his life, and also that he sold liquor to another person who became intoxicated, and by reason of such intoxication became careless in such a manner as to cause the death of the husband, who was riding with him, *held*, that the evidence failed to show that the deceased or his associate were intoxicated as charged, or that the death was so caused.

2. Evidence given by the plaintiff that the defendant owed her husband for work at the time of his death, and had subsequently refused to pay her the full amount, was improper and tended unduly to prejudice the jury.

3. In cases like the present, upon the question of damages, it is incompetent to attempt to prove, or to assume, what the husband would have done as to any particular business transaction had he lived.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Kane County; the Hon. CHARLES KELLUM, Judge, presiding.

Messrs. BOTSFORD & WAYNE, for appellant.

Messrs. CHARLES WHEATON and F. W. JOSLYN, for appellee.

MR. JUSTICE LACEY.   This was a suit brought by the appellee against the appellant under the "Dram Shop Act," charging him with selling her husband, Albert Pease, intoxicating liquor, by reason of which he became intoxicated, and by reason thereof lost his life, and also of selling intoxicating liquor to one John Seyller, who by reason thereof became intoxicated, and by reason of such intoxication became careless, and caused the death of said Albert Pease, by reason of which her means of support was injured, and she sought to recover damages.   There was a trial by jury, and verdict and judgment for $2,500.   The first count in the declaration charged appellant with selling intoxicating liquor to Albert Pease, by means of which he became habitually intoxicated, etc., and thereby wasted his means generally, to appellee's damage, etc.   The second count charges that appellant sold intoxicating liquors on the 20th of April, 1887, to Albert Pease, Noxy Vogel, John Seyller and James Roberts, who were in company with Albert Pease, and they thereby became intoxicated in the saloon of the defendant, and at the hour of half past seven o'clock P. M. of said day, they got into the wagon and started home; that at about the distance of two miles out, in consequence of the intoxication of John Seyller, who was driving the team hauling the said wagon, by liquor wholly furnished by appellant, the said wagon, with the lumber thereon, was overturned, and Albert Pease, who was riding thereon, by reason of intoxication was unable to assist or save himself, was under said lumber, and all parties being then so drunken by said liquors sold or given them by said

defendant, were unable to assist said Pease, or to remove the lumber from him, or to extricate him therefrom; in conse- quence thereof the said Pease was smothered and killed, and died beneath said load of lumber so fallen upon him, whereby, etc., the appellee had been injured in her means of support.

The third count charged the intoxication of John Seyller by intoxicating liquors sold by appellant to him, and that while Albert Pease was lawfully on his wagon and while said Seyller was so driving, in consequence of such intoxication, he carelessly and negligently drove said horses off a bridge being on the highway over which they were driving, and overturned the said wagon and lot of lumber thereon, and thereby it was thrown upon said Pease and he was thereby killed, etc.

It seems from the evidence that John Seyller was a farmer living some five miles from Hampshire, a village in Kane County, and was hauling lumber to build a small house on his farm, from said village; that the said deceased, Albert Pease, was a carpenter residing in said village, and had been employed to do the carpenter work on this house; that on the evening of the 20th day of April, 1887, the said John Seyller was in the village with his two-horse lumber wagon and had loaded it with lumber, boards, etc., and then put the tool chest of Pease on top of this load, and took Pease and Noxy Vogel, and himself driving the team, and started for home, and on the way picked up James Roberts. The route led over a pike or thrown-up road about sixty rods across Coon Creek bottom, in which pike there was a wagon bridge over Coon Creek, about three miles from the village of Hampshire. The pike was narrow and graveled on top with a coat of gravel about from seven to nine feet wide, and with a foot or two on each side of the gravel of black dirt, and the pike was about three and one-half feet high from the ditches on each side, which at that time were filled with water from sixteen to eighteen inches deep. At the point of the accident, about eight and one-half feet west of the bridge, the gravel was about eight and one-half feet wide,

Karau v. Pease.

and on the west side of the bridge, at the point of the acci-
dent, the bank was about three and one-half feet high above
the water, and the water and mud about two to three feet
deep, and by the overflow of the creek the bank had been
washed out and undermined slightly on the north side. At
the time of the accident it was very dark and muggy—there
having been a rain in the afternoon preceding—so dark that
one could scarcely see his hand before him, and Seyller could
but indistinctly see his horses while driving. As Seyller
was driving along, loaded as above stated, with deceased sit-
ting on the wagon, facing west holding his boring machine
on top the load, the wagon, some seven rods before reaching
the bridge, got off the graveled track on the north side on
the black dirt, and when reaching within eight and one-half
feet of the bridge, the bank having been washed out as
stated, the forewheel went down and the wagon turned
bottom side up into the ditch on the north side of the road,
with the boring machine on top of Pease's back, and the
lumber on top of that, and deceased face downward at the
bottom of the ditch in the mud and water, and in that con-
dition drowned probably within a minute or so after falling.
Seyller was also partly caught under the tool chest, but
succeeded in getting out. Vogel and Roberts were not
caught under the wagon or lumber and escaped. The
night was very dark, and as Seyller testified, they could not
see to unfasten and unload the lumber off Pease. We
think the evidence pretty clearly shows they could not, and
beyond much doubt, in time to save Pease's life, no matter
whether the party had been drunk or sober. Seyller then
loosened the horses and went for assistance and sent men
to get Pease out, who went, and succeeded in doing so, but
he was dead.

It is insisted here by the appellant's counsel that the ver-
dict is manifestly against the weight of the evidence, both
as to the fact of the alleged intoxication of the deceased and
Seyller, the owner and driver of the team attached to the
wagon, and as to whether the accident occurred on account
of such intoxication, and also that the court below admitted

improper evidence on the part of the appellee over the objection of appellant. We have carefully read and re-read the evidence in the case, and while there is evidence tending to show that both Seyller and deceased were somewhat under the influence of liquor when they started on their journey from Hampshire to Seyller's place, yet the weight of the evidence seems to us to largely preponderate against their being under its influence, at least to such a degree as to be likely to cause such an accident as the one which took place. The accident is of that nature that it might reasonably happen to the soberest of men, and to those reasonably careful. John Seyller swears that he was entirely sober, and in this he is strongly corroborated, while the evidence against his assertion is not strong or conclusive. And the evidence seems quite as strong that Pease was not under the influence of liquor to an extent to endanger his safety or to render him reckless or helpless. There was no evidence even tending to show that Pease was an habitual drunkard prior to this time, or that he was so from liquors sold to him by appellant, or that he in any way was so addicted to the use of intoxicating liquors that he neglected his business or squandered his means, or that appellee had suffered in the least in her means of support from such cause. Up to the time of his death he had been earning at his trade $500 to $700 per year, and there was no evidence of any neglect of his duty. The only ground of recovery in this case where there is any legal evidence tending to establish it, is for wrongfully causing Pease's death, as charged in the declaration. The appellee was permitted to testify over the objection of appellant that since her husband's death she had lost her homestead on account of a sale under a mortgage existing on it prior to and at the time of his death, because she had no means to pay off the mortgage, and also to testify that appellant owed her husband for four days' work, at two dollars and a half per day, and that he would only pay her after her husband's death $3.35. We think the court below erred in allowing this evidence. The only damages that appellee had a right to recover was for injury to

her means of support—direct damages, such as proximately follow the injury, as opposed to remote and speculative damages. Whether the deceased would have redeemed the homestead is the merest conjecture. The loss of the price of the lot on which the house was built, which appellee proved was $60, and other losses occurring, especially by the loss of the homestead by reason of its sale under mortgage, can not be certainly traced approximately to Pease's death. In the case of Flynn v. Fogerty, 106 Ill. 263, the court below allowed the plaintiff to show that she had been compelled to spend $175 in ditching forty acres of land, having rails split and in having fencing made. It was assumed by plaintiff that had her husband lived he would have done this work himself, and this expense would not have occurred to her. The same is assumed here, that had the husband lived he would have paid off the mortgage, and the homestead would have been saved and the loss prevented. The court in that case say (and the same is applicable here) that "it was necessarily a matter of the purest conjecture whether the husband would have done all this work or any part of it with his own hands had he been living, or, indeed, whether he would have had any of it done at all." Now, as applied to this mortgage, it depended upon the will and judgment of the husband, had he been living, whether he would have redeemed the homestead. No one can tell how he would have managed his affairs. The Supreme Court further say in the same line of argument in that case, and by the way of laying down a general rule, that "it is highly proper to show what the deceased himself had done in his lifetime, the character of his business, his habits of industry and thrift, income, and all that sort of thing, with a view of determining what he probably would have done in the future, had he not been killed. Could it have been known for a certainty what he would have accomplished, but for his death, that would have furnished the exact measure of her loss; but as that could not be definitely ascertained, the next best thing was to show the aid and assistance he would probably have rendered her but for

his death, and this could only be done by proving his age, physical condition, habits of industry, thrift, etc., as above indicated."

The general rule for the proof in such cases as above laid down, excludes the idea of it being proper to show what the husband would have done in any given case of business management. Conjectures in that regard would be infinite, and no reliable basis for computation of damages could be arrived at. The admission of the evidence that appellant refused to pay to appellee the full amount of what he owed her husband for labor in his lifetime, was still more objectionable than the admission of the other evidence. In the first place, he was under no legal obligation to pay it to her unless she was her husband's administratrix at the time, which the evidence fails to disclose. Secondly, it threw no light on the question of damages. If the claim was a just one it could have been collected by the administrator, and the question of its justice could not be litigated here. But it is said it was sought to introduce it under the first count of the declaration, to show while her husband was an habitual drunkard, he dissipated his means by spending his money for whisky at appellant's bar, and that what was retained was for settlement of appellant's bar account against her husband. In the first place, in answer to this there was no evidence of habitual drunkenness upon which to base it; and secondly, it was not proposed to prove that appellant was trying to offset deceased's bar account at the appellant's saloon. No such question was asked, no such evidence brought out. It is said, too, that appellant met the charge by testifying he paid the balance of the claim in full to appellee, having paid a portion in her husband's lifetime. This is not a sufficient answer. It was not the proper place to try such an issue, and besides the jury might have disbelieved him and thought that he was attempting to take an undue advantage of appellee after causing her husband's death. This evidence was well calculated to create a serious prejudice in the minds of the jury against appellant. The thought that he, under all the circumstances of the

death of appellee's husband, would attempt to wrong her out of an honest debt, due for the deceased's labor, would have a strong tendency to create, in the minds of the jury, a most indignant feeling against him. And this evidence might be handled most effectually by counsel in swelling the damages. Under the circumstances we think the judgment of the court below is erroneous.

For the error in admitting the above mentioned improper evidence, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*