STEPHEN MARSCHALL

V.

ANNA BELLE LAUGHRAN.

*Dram Shops—Proximate Cause of Death—Evidence—Instructions— Scope of Cross-examination—Measure of Damages.*

1. In an action under the Dram Shop Act brought by a widow to recover damages for the death of her husband, *held*, that the evidence justified the finding that the proximate cause of death was a fall by deceased while intoxicated.

2. Where deceased after the fall, vomited, any one with a sense of smell was competent to testify as to the presence of spirituous liquor in the contents of the stomach.

3. Upon cross-examination of a witness to develop the fact of his interest in the suit, it was the interest of the witness as he then understood it that was proper to be considered by the jury, and the fact that he was mistaken, as was subsequently discovered, as to such interest, did not affect the propriety of the cross-examination.

4. Upon the case presented, *held*, that the damages were not excessive, the jury having been properly instructed.

[Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of Rock Island County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JOSEPH L. HAAS, for appellant.

Messrs. McENIRY & McENIRY, for appellee.

MR. JUSTICE CARTWRIGHT. Appellee brought this suit against appellant, a saloon keeper, to recover damages under the Dram Shop Act for injury to her means of support, resulting from the death of her husband, and obtained a verdict for $2,000, on which the court, after overruling a motion for a new trial, entered judgment.

The facts appearing on the trial were substantially as follows: The deceased was about twenty-eight years old when he died. He was an able-bodied man, of good general health, of good education and of sober and steady habits. He had learned the trade of a machinist and worked at it a short time, after which he enlisted in the regular army of the United States and served five years. He was married to appellee June 12, 1890, while serving in the army and stationed in Montana. As a soldier he received $13 a month and rations and clothing. He was discharged from the army March 5, 1891, after which he and his wife visited their relatives, and afterward came to Rock Island, October 16, 1891, in hopes of finding work at his trade or some other suitable occupation. He had not found or done any work since his discharge. During the evening of December 2, 1891, he came to appellant's saloon perfectly sober and remained there until near midnight. While there appellant sold to him several drinks of lager beer and hot New England rum. The bill against him for liquor and cigars sold to him on that occasion was $2.20, a part of which liquor and cigars were used in treating others, some of whom, at least, treated him to drinks in return. When he left the saloon, he started with a companion for his home which was in the second story of a building, and in going up the outside stairway, he fell from a landing over the railing headlong to the frozen ground below, a distance of from thirteen to sixteen feet. He was taken up unconscious and lived five days, during which time he was sometimes rational and sometimes delirious, and at the end of that time he died—on the Monday evening following the fall. He had professional medical attendants, who pronounced the injury concussion of the brain or a clot of blood on the brain. The evidence established the sales

Marschall v. Laughran.

of intoxicating liquors by appellant to the deceased, and the fact that several such sales were of hot New England rum, and fully justified the jury in finding that such liquor caused intoxication of the deceased and his consequent fall and death. It is urged, however, that the fall was not the cause of his death. This claim is founded on the fact that during his illness and delirium, his wife frequently moistened his lips with whisky and water by putting her fingers in the liquid and touching his lips, and two days before he died she gave him part of a glass of beer. It is argued for appellant that this was the cause of his death; that by moistening his lips with liquor and water, the liquor was inhaled as it evaporated, and thereby she distilled the poison laden fumes of alcohol into his system, and put all the endeavors of science and medical lore at defiance, and when such conduct was followed by giving part of a glass of beer it proved fatal. The evidence does not justify that conclusion. It would seem more rational to refer the death to the fall than to the fumes of whisky mingled with water, and the medical testimony leads to the belief that the fall was the proximate cause of death.

Appellee testified, under objection, that deceased, when taken up stairs after the fall, vomited blood and whisky, and that one could smell whisky all over the house. It is objected that the presence of whisky in the contents of the stomach could only be proven by expert testimony, or by chemical analysis, and that the uncertainty of other evidence is illustrated in this case by the fact that it was rum instead of whisky. It might require a chemist in such a case to decide whether liquor was distilled from molasses or corn, but any person with the sense of smell is competent to discover and testify to the presence of spirituous liquor on such an occasion, and there was no attempt to distinguish different sorts of liquor by the witness. The only material inquiry was whether there was spirituous liquor present, and if there was anything in the point that she misnamed the kind, appellant had the full benefit of that fact. It is objected that the court permitted a cross-examination of appellant's witness,

John Ohlweiler, president of the Liquor Dealers' Associa-
tion, as to the interest of his association in the result of the
suit. The cross-examination was proper to show his relation
to the suit and his interest in the result as affecting his cred-
ibility. On such cross-examination he testified that it was
his duty by virtue of his office, to investigate suits brought
against members and in proper cases defend them; that his
association was contributing to the defense of this suit and
that in case judgment was recovered the association was to
pay the whole judgment and costs. Afterward, on the
motion for a new trial, he made an affidavit that the associa-
tion only aided the defense and appropriated limited sums
of money for such purposes, as he had subsequently dis-
covered, but that did not affect the right of cross-examina-
tion which had been exercised. His relation to the suit as
he understood it at the time he testified was proper for the
consideration of the jury.

The court refused appellant's fourth and sixth instructions,
and this is complained of. The fourth pointed out a witness
by name and applied a rule of law to him, and was rightly
refused. Phenix Ins. Co. v. La Pointe, 118 Ill. 384. The
sixth required of appellant a higher degree of proof than the
law demanded and was erroneous.

Appellee was allowed to prove the current rates of wages
of common laborers and of machinists, and this is objected
to. The amount of injury to the means of support of
appellee depended upon the ability of her husband to earn
money. After his discharge he had not been at work, but
had gone from place to place in search of work. As he
had not found work it was not possible to prove what he
would probably have earned if he had lived by what he
had earned. What he would have been worth to his wife
as a means of support was, as it often is, not capable of
exact determination, but the jury were called upon to decide
that question and should have the best information attain-
able as to his ability to earn money for her support. In
Flynn v. Fogerty, 106 Ill. 263, it was held "highly proper
to show what the deceased himself had done in his lifetime,

his habits of industry and thrift, income, and all that sort of thing, with a view of determining what he probably would have done in the future had he not been killed." These things were all fully shown to the jury in this case. It was shown that he had once acquired the capacity to earn money in the trade of a machinist, that he had afterward been in the army and that he had not since worked at any occupation. The jury were instructed that they should consider what the deceased himself had done in his lifetime, the character of his business or occupation and the income derived therefrom, his habits of industry and thrift, his age and physical condition, with a view of determining what he would have done in the future had he lived, but that they had no right to indulge in speculations or conjectures not supported by the evidence. The correct rule of damages was given to the jury. We think that in view of his education, age, habits, health and physical condition, and regarding him as without a trade or ability to earn money on account of having a trade, the damages awarded were fully justified. The judgment will be affirmed.

*Judgment affirmed.*