Jacqueline Robertson, Administrator of Estate of Steven C. Robertson, Deceased, and Jacqueline Robertson, Appellants, v. Erin White, Harold Weil and Harry Wolff, d/b/a Dearborn Liquor Store and Tavern, and John Blakely, Appellees.

Gen. No. 46,779.

First District, Second Division.

June 26, 1956.

Released for publication September 11, 1956.

 

Joseph Barbera, of Chicago, for appellants; Charles D. Snewind, of Chicago, of counsel.

Robert L. Brody, and George J. Gore, both of Chicago, for appellees; Robert L. Brody, of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

This is an action under the Dram Shop Act (Ill. Rev. Stat. 1955, Ch. 43, Par. 135). The complaint charges that the defendants in the operation of their dram shop served liquor to one Blakely, contributing to his intoxication; that as a result of his intoxication Blakely drove his automobile over Steven Robertson, plaintiff's four-year-old son, causing his death, and that thereby plaintiff suffered loss of means of support for which she seeks $15,000 damages. Plaintiff was required to answer interrogatories which disclosed that the decedent had no income by employment or otherwise. On defendants' motion the action was dismissed, and plaintiff appeals.

 The sole question before us is whether a suit by a parent under the Dram Shop Act can be predicated

upon the death of a child who at the time of his death was not contributing to the support of the parent. There is no case in Illinois or elsewhere, so far as we can find, which has passed on this specific question.

Two assumptions must be made at the outset in order that the scope of our ultimate conclusions may be properly understood. First, a child of four years who is not shown to have a peculiar ability, such for example as child prodigies of the stage, is unable to contribute to the support of his parents. Secondly, such inability will continue for years, but the period of minority is not necessarily the proper measure thereof.

The Dram Shop Act provides that every person who is ". . . injured, in person or property, *or means of support,* by any intoxicated person . . . shall have a right of action . . . against any person, . . . who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; and [against] any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, . . ."

Plaintiff contends (1) that the phrase "means of support" as construed by cases under the Dram Shop Act includes a potentiality of future support adequate to cover the instant case, and (2) that a presumption of injury to means of support should be created by analogy to a similar presumption employed in an action under the Injuries Act or Wrongful Death Act, as we will sometimes refer to it, (Ill. Rev. Stat. 1955, Ch. 70, Pars. 1, 2) by a parent for the death of a minor child.

■■ In all actions under the Dram Shop Act damages are based on a loss of future means of support, but in the ordinary case support is presently being rendered and it is presumed that it will continue. Plaintiff's argument requires the larger presumption that a child of four would at some time in the future have

179

earned income and contributed a part of it toward plaintiff's support. No legal obligation to support would arise unless plaintiff became indigent, within the terms of the Public Assistance Code. Shaver v. Brierton, 1 Ill.App.2d 192, 117 N.E.2d 298 (1954). It should also be noted, however, that despite some earlier decisions to the contrary (see Jury v. Ogden, 56 Ill. App. 100 (1894)), support actually though voluntarily contributed is sufficient and there need not be a legal claim to support (Pearson v. Renfro, 320 Ill. App. 202, 50 N.E.2d 598 (1943)).

In McClure v. Lence, 345 Ill. App. 158, 164, 102 N.E.2d 546 (1952), the court considered the differences between the Wrongful Death Act and the Dram Shop Act and with respect to the phrase "means of support" used in the Dram Shop Act said it "is literally construed to require as a prerequisite to recovery that the decedent did in fact render support, whether or not he was legally required to do so, and is thus a considerably more restricted measure of damages than the 'pecuniary injury' yardstick." In Buck v. Maddock, 167 Ill. 219, 225, 47 N. E. 208, the court apparently concurred in an instruction that recovery could not be had unless it was shown that there was a "direct loss to their means of support." The court did say that the instruction was more favorable to the defendants than the law would justify, taking away from the jury entirely the allowance of punitive damages. In Meidel v. Anthis, 71 Ill. 241 (1874), and McMahon v. Sankey, 133 Ill. 636, 24 N. E. 1027 (1890), the courts reject the argument that an immediate reduction in support income must be shown. In both cases language was used defining loss of means of support as embracing all those resources from which the necessaries and comforts of living are or may be supplied—"any resource from which the wants of life may be supplied." This language was taken from the Ohio cases of Schneider v. Hosier, 21 Ohio St. 98, and Mulford v. Clewel, 21

Ohio St. 191, but there is no indication that this capacity need not be presently shown by the earning and contributing of services or income.

In Betting v. Hobbett, 142 Ill. 72, 30 N. E. 1048, and Flynn v. Fogarty, 106 Ill. 263 (1883), statements are made that in an action by a wife, loss of means of support is shown by proof of death of the husband. Again, however, these cases make it clear that proof of present earning capacity is a necessary part of the action.

In Leverenz v. Stevens, 124 Ill. App. 401 (1906), it was held that a wife may recover in an action based on the habitual drunkenness of her husband, without proof of support. But that case is one of many which refuses to relieve a defendant from liability on the ground that the husband, prior to the sale in question, had already become a habitual drunkard.

In most of the dram shop cases we have examined action has been instituted by a wife seeking to recover because of injury due to the intoxication of her husband, and in each instance there was an immediate duty to support coupled with the present prospect of such support, save for the intoxication; which served as a base for the assessment of damages. It is a fair conclusion that while more general language than this has been used at times by courts, there is no support in precedent in dram shop cases for damages based on a future potentiality of support not presently provable.

Plaintiff's second argument draws an analogy between dram shop cases and the Wrongful Death Act (Ch. 70, Pars. 1, 2, Ill. Rev. Stat. 1955). The latter creates a right of action for death caused by wrongful act, neglect or default (provided the act, neglect or default is such as would have entitled the deceased to maintain an action therefor), and the measure of damages is fixed as ". . . pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, . . ." Courts have agreed that despite the use of the phrase "pecuniary injuries," a

181

"presumption of loss" exists in cases where the action is brought in behalf of a spouse or by next of kin who bears a lineal relationship to the deceased. Dukeman v. Cleveland, C., C. & St. L. R. Co., 237 Ill. 104, 86 N. E. 712 (1908); Chicago, P. & St. L. R. Co. v. Woolridge, 174 Ill. 330, 51 N. E. 701 (1898); Chicago & Alton R. Co. v. Shannon, 43 Ill. 338 (1867); City of Chicago v. Scholten, 75 Ill. 468 (1874); Wilcox v. Bierd, 330 Ill. 571, 162 N. E. 170 (1928); Howlett v. Doglio, 402 Ill. 311, 83 N.E.2d 708 (1949). Collaterals, including brothers and sisters, do not benefit by the presumption. In such cases, an actual showing of having received financial assistance is required. Rhoads v. Chicago & A. R. Co., 227 Ill. 328, 81 N. E. 371 (1907).

In announcing and stating the presumption in death cases no general rationale is set forth which would serve to explain how it is derived from the phrase "pecuniary injuries." "Pecuniary" in the ordinary sense relates to money and monetary affairs. It has been specifically held that the pain and suffering of bereavement is noncompensable in both death and dram shop cases, and this therefore cannot be considered the basis for the presumption. City of Chicago v. Major, 18 Ill. 349, 360 (1857); Flynn v. Fogarty, 106 Ill. 263 (1883); Freese v. Tripp, 70 Ill. 496 (1873). We must examine the precedents further to unearth the real source.

In Howlett v. Doglio, 402 Ill. 311, 315, 83 N.E.2d 708 (1949), a suit under the Dram Shop Act by a mother arising out of the death of her daughter as a result of the intoxication of a third person, the plaintiff contended that she was injured with respect to her property. The court thus described the plaintiff's theory:

". . . that the interest which nature and our form of society gives to each person in his lineal next of kin is 'property,' within the purview of the Dram Shop Act. She asserts, without citation of authority, that the

law has long recognized that each individual has a definite interest or 'stake,' real or potential, in his lineal next of kin; that anyone of the lineal next of kin of every person may be presently, or in the future, a source of financial protection and welfare; that one may, at any time, fall upon evil days and, of necessity, turn to parents or children for aid, and on the other hand, in the future, may conceivably inherit a substantial sum of money from a parent, grandparent or child if the person is allowed to live out his reasonable life expectancy."

In support of her argument the plaintiff in that case relied upon the presumption in cases under the Wrongful Death Act. The court held that injury "in property," as used in the Dram Shop Act, meant material loss and that the expression "pecuniary injuries" is not synonymous with "injury in property." As the plaintiff did not claim loss of means of support but relied solely on injury to property, this would have disposed of the case. However, the court quite obviously recognized that what the plaintiff was trying to do was to find a basis for a presumption in dram shop cases similar to that in wrongful death cases. The court then proceeded to distinguish between pecuniary injuries and loss of means of support and also between the purposes and objects of the two Acts. It states, among other things, that the Dram Shop Act though remedial in purpose is penal in character and should be strictly construed. (Cruse v. Aden, 127 Ill. 231, 20 N. E. 73; Meidel v. Anthis, 71 Ill. 241 (1874).) The liability imposed and the nature of the damages is of statutory origin and is expressly and exclusively defined in the Dram Shop Act. The court quotes with approval the language in Sharpley v. Brown, 43 Hun (N. Y.) 374: "This cause of action was unknown to the common law, and cannot be made analogous to other actions." The court then says that recovery must be limited to the

classes of injury specified in the law or fairly within its terms. It states, as we have found, that most of the actions are predicated upon injuries to means of support resulting from the husband's loss of earning power.

In Meidel v. Anthis, 71 Ill. 241, 243, the statute is described as "highly penal in its character, and introducing remedies unknown to the common law, in which the person prosecuting had decided advantages over the party defending." The court does not say what the advantages are, but obviously the sale of an intoxicating drink by a tavern keeper to a sober man is not an event to be noted, so that owners and operators of dram shops may have no knowledge of the facts on which their liability is based. Hence, a plaintiff's unsupported testimony may go unchallenged. (Orlicki v. McCarthy, 4 Ill.2d 342, 353, 122 N.E.2d 513.) Nor is innocence of any contribution to intoxication a defense. One owning or leasing property for the sale of intoxicating liquors is likewise liable, even though without fault. On the other hand, in actions for wrongful death, the wrong must always be shown and the action is limited to one which the deceased could have brought. There is, moreover, a more fundamental reason for the narrower construction of the Dram Shop Act.

The Wrongful Death Act had its roots in a natural development of justice. Students who have delved into the history of death by wrongful act (Pollock's "The Genius of the Common Law," p. 118; Holdsworth's "A History of English Law," vol. 3, p. 335) have pointed out that the rule which denied an action for wrongful death rested on a statement by Lord Ellenborough in a nisi prius decision which was not the considered judgment of the court. Pollock attributed the mistaken notion that there could be no action for wrongful death to the fact that some one got hold of a supposed Roman maxim that "personal actions die with the person" for

184

which there was no real authority and that as a result the common law was saddled with the monstrous principle that there could be no cause of action for wrongful death. In Shields v. Yonge, 15 Ga. 349 (1854) the Georgia court more than one hundred years ago refused to accept this version of the common law and in a very persuasive opinion, sustained an action for wrongful death without statutory authority therefor.

We will not attempt to reconcile the allowance of the presumption in wrongful death cases with its denial in dram shop cases by straining for some tenuous distinction between the words "injured in . . . means of support," and "pecuniary injuries." Our conclusion should rest on a sturdier basis than the fine act of drawing a desired meaning from ambiguous phrases. The presumption is not an ordinary legal presumption fixing a burden of proof or creating a prima facie case which may be rebutted. It gives the trier of fact a basis upon which to award compensation for those losses which cannot be measured in money, at least not presently. We must recognize the presumption for what it is—not as derived from the language of the Wrongful Death Act, but as a substantive element added to the statutory definition and unique in wrongful death cases. It was a bold stroke in the interest of justice, so that the *wrongful* death of a parent, spouse or child should not go without some remedial compensation by the wrongdoer, even though no pecuniary loss could be shown. The question which we must accept for decision is whether a similar presumption, unwarranted by the language of the statute should be imported into the Dram Shop Act.

As we have pointed out, the purely statutory nature of the Dram Shop Act; its purpose of disciplining a legal but ill-favored trade; its arbitrary character in that liability is not dependent upon negligence or other wrongful act; the difficulty of defense; the heavy responsibility placed upon owners or lessees of prop-

185

erty—all differentiate that Act from the Wrongful Death Act. While the courts should faithfully seek to apply the remedy provided for in the Dram Shop Act in order to serve its purpose of mitigating the evils and dangers which flow from the liquor traffic, yet they cannot enlarge the scope of the Act beyond a reasonable interpretation of its language. No reasonable interpretation warrants the creation of a presumption of injury such as exists in wrongful death cases.

Judgment affirmed.

McCORMICK, P. J. and ROBSON, J., concur.