# Elliott D. Jury and Jacob Sholem v. Lizzie Ogden.

1. DEATH BY WRONGFUL ACT—*Nature of the Resulting Action.*—
A right of action is not given by Section 1, Chapter 70, R. S., entitled
"Injuries," to individuals for wrongs to them, respectively, as such, but
to the personal representatives of the person killed, for the common bene-
fit of those who are legally entitled to share in the distribution of his per-
sonal estate. The amount to be recovered is what the statute regards as
the pecuniary value of the addition to such estate left, as the deceased,
in reasonable probability, would have made to it and left, if his death
had not been wrongfully caused.

2. SAME—*Measure of Damages.*—The amount of the recovery is to
be estimated by the jury from all the facts and circumstances found
concerning the deceased, his prospect of life, his means, opportunities,
ability and habits with reference to the making and saving of money or
money's worth; in other words, such pecuniary damages, not exceeding
the sum of $5,000, as he would have sustained if death had not ensued,
excepting those that would be punitive to the defendant or exclusively
personal to himself, such as pain and suffering.

3. SAME—*When the Cause of Action Arises.*—The claim of the
beneficiaries has no existence previous to or at the time of death. It
arises upon that event, and solely from their relation to the deceased, as
surviving widow or next of kin.

4. SAME—*Legal Claims Only Recognized.*—No other relative than the
widow and next of kin is mentioned in the statute as a possible founda-
tion for the action. A legal claim to his support, or the fact of actual
support at the time of death, in no way affects it. A legal right of the
beneficiary to support from the deceased, existing before and at the time
of his death, is not essential to the right of recovery for his or her benefit
under Chapter 70, R. S., entitled Injuries.

5. THE DRAMSHOP ACT—*Nature of Actions Under.*—The provisions
of Chapter 43, R. S., entitled Dramshops, are materially different in their
bearings upon questions of support, etc., from Chapter 70, R. S., entitled
Injuries. Under the former, every husband, wife, child, parent, guard-
ian, employer or other person, injured in person or property by any in-
toxicated person, or in consequence of the intoxication, habitual or
otherwise, of any person, is given an action against persons who, by selling
or giving intoxicating liquors, have, in whole or in part, caused such
intoxication.

6. SAME—*Damages Under, Not Limited—Conditions of the Remedy.*
—By the dramshop act the right of recovery is not confined to actual
damages nor limited in amount, nor is it conditioned upon the death of
the person whose intoxication is caused, nor upon his right to recover if
he survived, nor upon the existence of any such relation to him as would
entitle the claimant to share in the distribution of his personal estate.

7. SAME—*The Remedy—To Whom Given—Damages.*—Under the dram-

Jury v. Ogden.

shop act the remedy is given to any party in his individual right who, by such intoxication, is injured in person, property or by means of support for the amount of his actual, and in a proper case exemplary, damages.

8. SAME—*Nature of the Injury.*—The injury in person or property mentioned in the dramshop act is an injury to, or in violation of a legal right, in actual enjoyment before and at the time of the injury thereto.

9. SAME—*Injury to Means of Support.*—The means of support referred to in the dramshop act are such as the person intoxicated is under a legal obligation to furnish, and enjoyed by the person injured under an enforcible legal right, and not such as are enjoyed by the mere grace and favor of the person who is the subject of intoxication.

**Memorandum.**—Action under the dramshop act. In the Circuit Court of Edgar County; the Hon. EDWARD P. VAIL, Judge, presiding. Trial by jury; verdict and judgment for plaintiff; error by defendants. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed October 29, 1894.

*Copy of instruction referred to in the opinion:*
The jury are instructed that if they find from a preponderance of the evidence in this case that the plaintiff, Lizzie Ogden, was over age and was living with her father, Jonathan Ogden, as a member of his family the same as before her majority, and so continued to live with him until about May, 1893, and that while she so lived with him, he, the said Jonathan Ogden, contributed to her support, and if you further find from a preponderance of the evidence that about May, 1893, the said Lizzie Ogden was compelled to, and did, leave her father's home in consequence of the habitual intoxication of her said father, and that such intoxication was produced by intoxicating liquors sold or given to the said Jonathan Ogden by the said defendant, Elliott D. Jury, as alleged in the plaintiff's declaration, and that if you further find that her said father, from May, 1893, up to the time of bringing this suit, by reason of such intoxication produced as aforesaid, failed or refused to support her, then the jury are authorized to find that the plaintiff has been thereby injured in her means of support, and the fact that the said Lizzie Ogden is above the age of eighteen years can make no difference in such state of the proof.

SELLAR & TANNER, attorneys for appellant Jury, and JAMES A. EADS, attorney for appellant Sholem.

J. W. HOWELL and S. I. HEADLEY, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This action was commenced by appellee on August 21, 1893, under the dramshop act, against the keeper of a

liquor saloon, and the owner of the premises who leased them for that purpose, for alleged injury in her person and means of support caused by the intoxication of her father produced by liquor sold to him by said keeper. She obtained a judgment for $1,200, which the defendants by the writ of error, here prosecuted, seek to reverse.

It was shown that when she brought the action she was about twenty-five years of age, unmarried, and had lived with her father upon his farm of three hundred and forty acres, as a member of his family, from her birth until May, 1893, when she finally left, and has since received from him no support whatever. She was in no sense a pauper, nor was there any contract between them binding him to support her; but the proof is ample that when sober he was to her what a father should be, and there appears no reason to doubt that but for his intoxication she would have remained with and been supported by him so long as they lived and she was unmarried. From July, 1892, until she left, appellant Jury kept a saloon under a written lease for that purpose from his co-appellant. Throughout that period Ogden was his constant patron, and in immediate consequence of intoxication caused by liquor he purchased there, by brutal personal violence and threats, the particulars of which need not be stated, compelled her, for safety, to leave her home as she did. His wife left him in January 1893, and obtained a divorce for like cause. The evidence tends to show, and we think does show, that Jury was personally served by appellee with notice in writing from her mother, and verbally requested by her brother, not to sell intoxicating liquor to him, but persisted in so doing, declaring that he would sell to whom he pleased.

Had appellee confined her claim to damages for injury to her person, the evidence would have justified a larger judgment. But the court instructed the jury, upon the hypothesis of the facts above stated, that they would be authorized to find that the plaintiff had been injured in her means of support, notwithstanding her age, and since it is not improbable that something was allowed by the jury for such

Jury v. Ogden.

injury under that instruction, if it was error, the verdict was to that extent against the law, and should, therefore, have been set aside.

It is insisted for appellants that because of her age she had no legal claim for support from her father, and hence that his failure or refusal to give it, from whatever cause, could not have been an " injury " in the view of the law. On behalf of appellee it is claimed that any loss or diminution of the means of support actually received, though not of legal right, caused as stated in the statute, is a sufficient ground for recovery under it. This is the only question in the case, and although of considerable importance, no authority directly in point upon it has been found.

For appellee counsel cite Railroad Company v. Barron, 5 Wall. (U. S.) 72–90, in which it is held that to maintain the action given by Chap. 70 of the Revised Statutes it was unnecessary to show a legal right in the beneficiaries to support from the deceased, as authority, from its analogy to the case at bar.

Section 1 of that act provides that " whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured; " and section 2 provides that " every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate, and in every such action the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries

resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of $5,000."

A right of action is not by this statute given to individuals for wrongs to them, respectively, as such, but to the personal representative of the person killed, for the common benefit of those who are legally entitled to share in the distribution of his personal estate. The amount to be recovered is what the statute regards as the pecuniary value of the addition to such estate left as the deceased, in reasonable probability, would have made to it and left, if his death had not been so wrongfully caused. It is to be estimated by the jury from all the facts and circumstances proved, his prospect of life and his means, opportunities, ability and habits, with reference to the making and saving of money or money's worth; in other words, such pecuniary damages as he would have sustained if death had not ensued, excepting those that would be punitive to the defendant or exclusively personal to himself, as for pain and suffering, but not exceeding the sum of $5,000. The claim of the beneficiaries has no existence previous to or at the time of his death. It arises upon that event and solely from their relation to him as surviving widow or next of kin. No other relation is mentioned in the statute as a possible foundation for it. A legal claim to his support or the fact of actual support at the time of his death in no way affects it. Of three children one may be legally entitled to be and actually being supported by him, another so entitled to support but not actually receiving it, and the third, neither receiving nor legally entitled to receive it; and yet, being next of kin in the same degree, they would share alike in the distribution of the damages recovered in an action under this statute.

Such seems to be the construction given to it by the Barron case, *supra*, and the other Illinois cases therein referred to, which are all that are cited in the argument for appellee, and which appears to us to be obviously well grounded in the language of the act; and it necessarily follows therefrom that a legal right of the beneficiary to support from the deceased, existing before and at the time of his death, is

not essential to the right of recovery for his or her benefit in an action under that statute.

But we are of opinion that the provision of the dram-shop act (R. S., Ch. 43, Sec. 9) under which this action was brought, is materially different in its bearing upon the question here under consideration. It is as follows:

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons; and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who, having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained, and for exemplary damages."

By this act the right of recovery is not confined to actual damages nor limited in amount; nor is it conditioned upon the death of the person whose intoxication is caused as therein stated, in consequence of such intoxication, nor upon his right to recover if he survived, nor upon the existence of any such relation to him as would entitle the claimant to share in the distribution of his intestate personal estate. It is given to any party, in his or her individual right, who by such intoxication, habitual or otherwise, is injured in person, property or means of support, for the amount of his or her actual and particular damage, and in a proper case, for exemplary damages.

It is obvious that the injury in person or property mentioned in this act is an injury to or in violation of a legal

right, in actual enjoyment before and at the time of the injury thereto; and the means of support are put in the same category. The question is whether they also must be of legal right, that is, given by law, and in like actual enjoyment, to support an action for injury in respect thereof under this act, or will it suffice that they are in actual enjoyment without any claim of right thereto which might be enforced by law.

The only distinction contemplated by the question is between means of support enjoyed under an enforceable legal right and means enjoyed under mere grace and favor of the person who is the subject of intoxication; that is, without legal obligation on his part to furnish them. The probability of his continuing to furnish them without legal obligation but for such intoxication, would, in .fact, depend upon other considerations, such as moral obligations, benevolence, gratitude, affection, or even the existence of immoral relations—none of which can properly be here considered. In Good v. Towns & Sullivan, 56 Vt. 410, which was under a statute giving a right of action to one "in any manner dependent" on a person whose death was caused by intoxicating liquor illegally furnished, and the question was whether it meant a legal or only an actual dependence, the court was of opinion that no further or other distinction could be considered; that "the law can not determine what a moral obligation is, and takes no cognizance of them;" and held that the statute must be construed to mean a legal dependence, mainly for the reason that "if it is given a greater scope than this, there would be great difficulty in administering it. There would seem to be no stopping place short of including all possible cases of actual dependency, and notwithstanding the absence of a moral obligation to support." That reason is of equal force here, and it is easy to conceive of many cases in which means of support are actually being received where it may be presumed nobody would contend that an action for their deprivation would lie under our statute; for example, where they are furnished in consideration of im-

moral relations between the parties and in order to maintain them.   Can it be supposed that for injury in means of support so received, the statute was intended to give exemplary damages?

We may add that such a construction would give rise to much difficulty in determining what should be considered means of support, and consequently, who would be in position to maintain the action.   Does the act include merchants and mechanics who have lost the trade and patronage of one killed or impoverished by reason of intoxication?   Where would be the limit of liability, as to parties?

For these reasons we hold that the means of support referred to in the statute are such as the person intoxicated would be legally bound to furnish.   It was therefore error to give the instruction complained of, for which the judgment will be reversed and the cause remanded.