(No. 13439.—Decree affirmed.)

LIZZIE CARNEY *et al.* Appellees, *vs.* DANIEL A. SHEEDY *et al.* Appellants.

*Opinion filed October 23, 1920—Rehearing denied Dec. 10, 1920.*

1. DEEDS—*burden is on complainant to prove alleged insanity of grantor.* In a suit to set aside a deed the burden is on the complainant alleging insanity of the grantor to prove the allegation by a preponderance of the evidence.

2. SAME—*when a court of review will not disturb verdict in a suit to set aside deed.* In a suit to set aside a deed on the ground of mental incapacity and undue influence, if there is a conflict in the evidence and the testimony by fair and reasonable intendment authorizes the verdict of the jury, which is approved by the decree, a reviewing court will not set aside the decree as unwarranted.

3. SAME—*when defendants to a suit to set aside a deed cannot testify in their own behalf.* Defendants in a suit to set aside a deed are not competent witnesses in their own behalf, where the complainants are suing as heirs of the grantor and the defendants are defending as grantees.

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS E. FORD, Judge, presiding.

MCBRIDE & VOGELSANG, C. F. MORTIMER, and OSCAR J. PUTTING, for appellants.

HOGAN & REESE, and PROVINE & PROVINE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Christian county setting aside deeds executed by John Sheedy, in his lifetime, to four of his sons. The bill was filed by four daughters of Sheedy and three grandchildren, the surviving children of a deceased daughter of Sheedy. The four sons were made defendants to the bill, and they and the complainants were the only children and heirs-at-law of John Sheedy. Of the four sons, Daniel A. and John W. are adults and Maurice P. and Thomas H. are minors. The three grandchildren, who are complainants by their next friend, are also minors. About two weeks before his death, John Sheedy, while in a hospital suffering from his last illness, executed a deed to his sons Daniel A. and John W. for 120 acres of land, subject to $5000 of a mortgage for $14,000 on the land described in the deed and other lands. At the same time he executed a deed to his sons Maurice P. and Thomas H. for 80 acres of land, subject to $4000 of a mortgage for $14,000 on the land conveyed and other lands. On the same day he executed a will disposing of the residue of his estate. The bill alleged Sheedy was at the time the deeds were executed of unsound mind and memory, incapable of managing his own estate and transacting his business affairs; that he was a man of violent and ungovernable temper, abusive to his family, addicted to the excessive use of intoxicants and for a great portion of the time for several years before his death was in a state of intoxication, which so weakened him, both mentally and physically, as to render him incompetent to dispose of his property and transact his business. The bill also charged the four sons resorted to undue influence and misrepresentations to procure their father to execute the deeds, and that his act in making the deeds was the result of such undue influence and was not his free and voluntary

act. The answers denied all the material allegations of the bill, and at the trial of the case the court submitted as issues of fact to the jury whether at the time he made the deeds Sheedy was of sound mind, able to understand and transact ordinary business and knowingly execute the deeds, and whether the deeds were secured by fraud or undue influence. The jury found Sheedy was not of sound mind when he executed the deeds and also found he was procured to execute them by fraud and undue influence. The court overruled motions for a new trial and for a decree dismissing the bill for want of equity notwithstanding the verdict, and entered a decree setting aside the deeds as prayed in complainants' bill.

No serious errors of law are complained of by appellants, but it is insisted with much earnestness that there was no evidence of undue influence, and that the verdict of the jury and the decree of the court that John Sheedy was not of sound mind when he executed the deeds is not supported by but is palpably contrary to the weight of the testimony.

At the time of his death John Sheedy was the owner of approximately 300 acres of land, incumbered for $14,000. The land was valuable. It is stated in the brief of appellees and not denied that it was admitted the land was worth approximately $65,000 above incumbrances. The deeds conveyed to the four sons of Sheedy 200 acres, subject to $9000 of the $14,000 incumbrance, leaving about 100 acres, subject to $5000 of the incumbrance, as intestate estate, or if the will was valid, to be divided equally among the deceased's children and heirs and his divorced wife. Sheedy was sixty-four years old at the time of his death. He had lived on and farmed his land for many years. He was a man of violent temper and addicted to the excessive use of intoxicating liquor. The proof shows he kept whisky in his house and a considerable portion of the time was in a state of intoxication. His treatment of his family was so

harsh and cruel that his children left home before any of them were married,—some of them while they were considerably under age. His wife, after leaving him a number of times and returning to live with him again, finally left him and secured a divorce in 1918 on the ground of extreme and repeated cruelty. At the time his physical condition became such that he was taken to a hospital for treatment, and for some time previous, none of the members of his family were living with him. His health became such that August 20, 1919, he went to a hospital in Taylorville for treatment. His condition grew constantly worse until September 13, 1919, when he died. The deeds, as we have stated, were executed August 28, 1919. The proof shows that for most of the period that he was in the hospital he was a very sick man and suffered much from difficulty in breathing. Part of the time he either could not or would not talk, and some of the witnesses say he appeared to be in a stupor. August 28 his son Daniel went to John Perry, a conveyancer in Taylorville, and told him his father wanted to see him at the hospital. Perry went to the hospital about nine o'clock in the morning and received directions from the deceased, of which he made a memorandum, then went to his office, prepared the deeds and a will and returned to the hospital, where they were executed by Sheedy signing the instruments himself. He directed Perry to take the deeds and deliver them to the grantees at his death. None of the sons were present at the time the deeds were executed.

Appellants at the close of complainants' evidence moved the court to instruct the jury to find for the defendants on the issue of mental capacity, which the court denied. They then moved the court to instruct the jury to find for defendants on the issue of undue influence, which was also denied. They insist there was no evidence to support the allegations of the bill on the issue of undue influence and that the court erred in denying their motion to take that is-

sue from the jury. We do not deem it necessary to refer to the evidence on that issue, for if the verdict and decree are supported by the evidence on the issue of mental incapacity the question of undue influence becomes immaterial.

In addition to the testimony of four daughters of the deceased, for complainants, that at the time of the execution of the deeds Sheedy was in their opinion mentally incapable of understandingly transacting ordinary business, there was the testimony of a number of other disinterested witnesses, acquaintances of deceased, who visited him at the hospital before the deeds were executed, on the day they were executed and after that day, including a physician who was called August 30 to assist in the treatment of Sheedy and visited him eight or nine times afterward, that he was mentally incapable of transacting ordinary business. There was some other testimony for complainants on the subject but not of great importance and not relating to the mental condition of deceased at the particular time the deeds were made. The witnesses for complainants who saw him in the hospital describe his condition, actions, conduct, and some little conversation with him, as the basis for the opinions expressed. A larger number of witnesses, who were acquaintances of deceased, some of whom saw him in the hospital, including a physician who treated him from the time he entered the hospital and the man who drew the deeds and took Sheedy's acknowledgment to them, testified for the defendants that he was mentally able to understand and transact ordinary business.

It is indisputable that complainants' testimony tended to support their claim that John Sheedy was not mentally capable of understandingly executing conveyances of his property. On the other hand, the testimony of defendants undeniably tended to prove that he was mentally capable of conveying his property. The rule is, of course, in such cases as this, that the burden is on the party alleging insanity as ground for relief to prove it by a preponderance

of the evidence. Whether a party was mentally sound or capable of transacting ordinary business and disposing of his property by will or deed must usually be proved by opinions of witnesses who knew and observed such party. As affecting the value of and the weight to be given the testimony and opinions of witnesses, much depends upon the intelligence and fairness of the witnesses, their opportunities for observation and the reasonableness of their conclusion from the facts stated upon which the conclusion is based. The testimony here presents a situation similar to that discussed in *Shevalier* v. *Seager,* 121 Ill. 564, where the court said, in substance, that the testimony was conflicting, the witnesses on opposite sides having testified to opposite conclusions, and in such case it was the peculiar province of the jury to determine which set of witnesses was right and which was wrong. The court said, where the trial judge, under such a state of evidence, enters a decree approving the conclusion reached by the jury this court will not reverse it. The reason for that conclusion, as stated in *Calvert* v. *Carpenter,* 96 Ill. 63, and many other cases, is, that the judge and jury who try a case have superior advantages over a court of review in ascertaining the truth. They see the witnesses and are able to observe their manner while testifying. This gives them vastly superior advantages in determining the weight and credit that should be given the testimony, over a court of review, which only reads a transcript of testimony. These considerations have led to the adoption of the rule stated in *Hollenbeck* v. *Cook,* 180 Ill. 65, and adhered to in many other cases, that where there is a contrariety of evidence and the testimony by fair and reasonable intendment will authorize the verdict, even though it may be against the apparent weight of the evidence, a reviewing court will not set it aside. A few of the many cases sustaining that rule are *Egbers* v. *Egbers,* 177 Ill. 82, *Petefish* v. *Becker,* 176 id. 448, *Hill* v. *Bahrns,* 158 id. 314, and *Buchanan* v. *Mc-*

*Lennan,* 105 id. 56. We do not overlook the rule that where the verdict and decree are clearly and palpably contrary to the weight of the evidence it is the province and duty of a reviewing court to reverse, but where the evidence is conflicting, that of each party being sufficient, when considered alone, to justify a finding in favor of such party, the rule referred to is not to be applied for the reasons stated in the cases above cited.

Defendants did not offer to testify on the trial of the case. During the argument before the jury one of complainants' counsel called the attention of the jury to the fact that defendants had not testified in their own behalf. Defendants' counsel objected to that statement for the reason that they claimed defendants were not competent, under the statute, to testify. Counsel for complainants expressed the opinion that they were competent and that he had a right to comment on the fact that they did not testify. No ruling was made by the court. The above is all that the abstract shows occurred on that subject. Defendants were not competent witnesses in their own behalf, as they were sued by complainants claiming as heirs and defendants were defending as grantees. (*Johnson* v. *Fulk,* 282 Ill. 328.) There is no complaint of any ruling of the court, as none was made, and the mere statement and colloquy between counsel is all that is objected to. We do not consider it so prejudicial as to require a reversal of the decree.

The state of the evidence on the issue of mental capacity was such that we are of opinion this court would not be warranted in reversing the decree on the ground that it was palpably contrary to the weight of the testimony, and there being no material error of law shown to have been committed on the trial of the case, the decree is affirmed.

*Decree affirmed.*