Josephina Nelson, Administratrix of the Estate of Carl Alfred Nelson, Deceased, Appellee, v. Stutz Chicago Factory Branch, Inc., Appellant.

Gen. No. 33,421.

528

ion filed October 11, 1929.   Rehearing denied October 22, 1929.

TENNEY, HARDING, SHERMAN & ROGERS, for appellant; S. ASHLEY GUTHRIE, of counsel.

JOSEPH D. RYAN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action for damages for negligently causing the death of plaintiff's intestate, a boy about 10 years of age, on April 10, 1927, as the result of a collision between an automobile in which he was a passenger and defendant's automobile, driven by its servant, Joseph R. Smith, on the outer driveway in Lincoln Park, just north of North Avenue, Chicago, there was a trial before a jury in November, 1928, resulting in a verdict and judgment against defendant for $10,000. This appeal followed.

It was sufficiently proven upon the trial, and is here admitted, that the automobile which collided with the other automobile in which the boy was riding was owned by defendant, and that the collision and the boy's death were proximately caused by Smith's negligence. The real issue was whether Smith at the time was operating defendant's automobile in the course of and within the scope of his employment.

Defendant's counsel, as grounds for a reversal of the judgment, here contend (1) that the trial court erred in not directing a verdict for defendant because

(a) the evidence shows that Smith had no authority either express or implied to operate defendant's automobile at the time, and, indeed, had been forbidden by a rule of defendant so to do, and because (b) the evidence shows that Smith was then engaged "in a pleasure excursion of his own"; (2) that the verdict is against the manifest weight of the evidence; (3) that plaintiff's attorney in his argument to the jury made certain improper and prejudicial remarks; (4) that the court erred in giving to the jury instruction No. 20, offered by plaintiff; and (5) that the verdict is excessive.

Defendant was engaged in the business of selling Stutz automobiles. Its main salesroom or plant was at No. 2500 South Michigan Avenue, and its so-called "north side branch" was at 5051 Broadway, near to and north of Lawrence Avenue, Chicago. F. D. Cerf was its president and general manager; B. G. Peterson its treasurer; and J. B. Burns its sales manager. Edward Clark was a salesman at the north side branch and also the manager of the business at said branch. There were several salesmen and several so-called "demonstrators" at the main plant and Burns had charge over them. Smith had there been employed for about a year, acting for eleven months as a demonstrator, i. e., demonstrating for prospective purchasers cars that defendant had for sale. About one month prior to the accident his position had been changed to that of a salesman, but occasionally he still demonstrated cars both in the daytime and in the evening after closing hours. About six weeks prior to the accident, according to the testimony of its witnesses, defendant issued and posted an order to the effect that no cars should be taken out of the main plant, or demonstrations made, after closing hours (about 6 o'clock p. m.), without special permission from Burns or Cerf, which permission Smith testified he always

could procure. This order did not apply to Clark, or to the north side branch, and Clark frequently caused demonstrations to be made for his prospective purchasers during the evening. He had authority to obtain cars from the main plant for such purposes, and it was customary for a demonstrating driver or drivers to be sent to Clark from the main plant before closing hours to be used by him as such during the evening. Clark testified: "It was customary to have a demonstrator out at 5051 Broadway in the evening. . . . If one had come and I was through with him for the evening I would send him home. . . . If I had a prospect I certainly had authority to keep him (the demonstrator). If I had authority to keep him, I suppose I had the same authority to send for him, at least I did it on this occasion." It was also a rule at the main plant that demonstrating cars could not be returned to that plant after 8 o'clock p. m. Sam Robinson, defendant's porter, car washer and night man at that plant, testified: "I did not let demonstrating cars in or out at night. If anyone came with a demonstrating car after I started work at 8 o'clock I would not let them in. They would either take the car home and bring it in the morning, or bring it in when they had a key." It appears that each salesman was paid a commission on the price of cars sold through his efforts, had a drawing account against commissions, but received no other compensation. It also appears that each demonstrator received something when cars were sold as a result of his demonstration. Peterson testified: "Everybody had an interest in the business from the sales manager down. . . . Mr. Clark, the north side manager, received a commission on his sales, and the company was interested in the sale of cars through that agency as well as the agency at 2500 Michigan avenue. . . . Between the 1st and the 10th of each month I was generally around the Michigan avenue plant in the

evening, but I was not there on Saturday night, April 9th, 1927. . . . The only business on Saturday nights was that of showing cars to people. . . . On the night of April 9th, Cerf was not there. . . . I don't know where Burns was . . . I was told that Thorsen (another salesman) and Smith were on the floor that night showing cars to customers.''

About 10 o'clock on said evening Clark telephoned from the north side branch to Thorsen to the effect that he wanted a man to immediately come with a car to make a demonstration to a prospective customer, who ''looked promising.'' Upon Smith being advised of the request he unsuccessfully tried to reach Burns by telephone in order to obtain the latter's permission to take out a car and make the requested demonstration. Thereupon Smith and Thorsen went in a car to said north side branch and they thereafter made a demonstration of it, which lasted over half an hour and during which Smith did ''quite a bit of driving.'' Upon its completion, and after they had had something to eat, Smith drove Thorsen westerly to the latter's home on Lawrence Avenue, near Kedzie Avenue. Returning easterly, and again reaching Broadway, Smith drove the car southerly to the home of friends, Mr. and Mrs. Devinger, on Broadway, a few doors south of Belmont Avenue, where a card party was in progress. Smith joined the party, and there played cards until about 5:45 o'clock on Sunday morning, April 10, 1927. It was considerably after midnight when Smith reached the Devinger home. He testified that, if he had immediately returned with the car to defendant's main plant ''after he had finished his work,'' he would have arrived there ''about 1:15 o'clock in the morning''; that he knew of the company's rules as to the taking out and bringing in of demonstration cars; and that he believed that probably at that hour he, not having a key, could not gain admission to the plant.

Shortly before 6 o'clock on Sunday morning, April 10, Smith, after leaving the Devinger home, started to drive the car back to defendant's plant on South Michigan Avenue. He went east and then southerly through Lincoln Park, taking the outer driveway, which he regarded as the "quickest way" to reach his destination. While driving southerly in said driveway he collided with the other automobile, in which were riding plaintiff, her husband, plaintiff's intestate, and another boy. The deceased left him surviving as his next of kin, his father, his mother (plaintiff) and two sisters, aged respectively 18 and 14 years. Because of the accident Smith was discharged from his employment with defendant.

As to defendant's counsel's first contention, we are of the opinion, considering the evidence as above outlined and all the facts and circumstances in evidence, that the trial court at the conclusion of all the evidence properly refused to direct a verdict in defendant's favor. In *Chicago City Ry. Co. v. Martensen,* 198 Ill. 511, 512, it is said: "We have decided very many times that on a motion to take a case from the jury, either at the close of plaintiff's evidence or at the close of all the evidence, the naked legal question thereby raised in this court is whether or not there is any evidence in the record fairly tending to support the plaintiff's cause of action. It is never a question of the weight of the testimony." (See, also, *Foster v. Wadsworth-Howland Co.,* 168 Ill. 514, 517; *Mahlstedt v. Ideal Lighting Co.,* 271 Ill. 154, 163; *Shannon v. Nightingale,* 321 Ill. 168, 175.) In the present case there was evidence showing, and indeed it is here admitted, that the automobile which collided with the automobile in which plaintiff's intestate was riding was owned by defendant, that at the time of the collision it was being driven by defendant's servant, Smith, and that Smith's negligence proximately caused the collision and the death

of plaintiff's intestate. The only defense was in substance that at the time of the collision defendant's automobile was being used without its authority, and not on its business, but for a "pleasure excursion" of the driver, Smith. The proof or admission that defendant owned the automobile constituted prima facie evidence that it then was being used on defendant's business and that Smith, in driving it, was acting within the scope of his employment at the time. (*Howard v. Amerson*, 236 Ill. App. 587, 593; *Kavale v. Morton Salt Co.*, 242 Ill. App. 205, 211, 329 Ill. 445, 452; *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 678; *Ferris v. Sterling*, 214 N. Y. 249, 253.) In addition to this prima facie evidence there were other facts and circumstances in evidence, all of which required the submission to the jury of the question, as one of fact, whether at the time of the collision, Smith was driving the automobile with defendant's authority, express or implied, and within the scope of his employment. (See cases last cited and *Swancutt v. Trout Auto Livery Co.*, 176 Ill. App. 606, 610, 611; *Bloodgood v. Whitney*, 235 N. Y. 110, 114; *Vernarelli v. Sweikert*, 123 Wash. 694, 698; *D'Aleria v. Shirey*, 286 Fed. Rep. 523, 525; *Sieber v. Russ Bros. Ice Cream Co.*, 276 Pa. 340, 345; *Gojkovic v. Wageley*, 278 Pa. 488, 490.) And we think it was also a question for the jury to decide under all the facts and circumstances in evidence whether at the time of the collision Smith was returning from a "pleasure excursion of his own," as argued by counsel, or whether at said time he had resumed his employment with defendant in the completion of work for defendant which originally he had undertaken to perform. (See *Kavale v. Morton Salt Co.*, 242 Ill. App. 205, 214; *Moore v. Rosenmond*, 238 N. Y. 356, 359; *Good v. Berrie*, 123 Maine. 266, 268; *Cusimano v. Spiess Sales Co.*, 153 La. 551, 556; *Gibson v. Dupree*, 26 Colo. App. 324, 144 Pac.

1133, 1136; *Barmore v. Vicksburg, S. & P. R. Co.*, 85 Miss. 426, 444.)

And on these questions the jury found in favor of plaintiff and against defendant, and we cannot say that their verdict is against the manifest weight of the evidence, as defendant's counsel also contend.

And we do not think that any of the remarks made by plaintiff's attorney in his argument to the jury concerning the statutory limit of the amount recoverable in actions for damages for wrongful death were improper, or so prejudicial as to require a reversal of the judgment, as defendant's counsel further contend. Nor do we think that the trial court committed prejudicial error in giving instruction No. 20, offered by plaintiff, especially when the other given instructions are considered. (See *Schaffner v. Massey Co.*, 270 Ill. 207, 216; *Deming v. City of Chicago,* 321 Ill. 341, 344.) And we cannot say that a verdict for $10,000 (the limit allowed by statute) for the death of a 10-year old boy, who was in good health and who left him surviving a father, mother and two sisters, is excessive. Verdicts in such amounts for the death of boys of about that age have frequently been affirmed. (See *Deming v. City of Chicago*, 237 Ill. App. 637, affirmed in 321 Ill. 341, 342.)

The judgment of the superior court should be and is affirmed.

*Affirmed.*

BARNES, P. J., and SCANLAN, J., concur.