**Trust Company of Chicago, Administrator of Estate of Albert Goodman, Deceased, Appellee, v. Peter Ancateau, Appellant.**

**Gen. No. 9,800.**

Opinion filed December 22, 1942. Re-hearing denied February 2, 1943.

Samuel Levin and Stanley Watson, both of Chicago, and Edgar J. Elliott, of Wheaton, for appellant.

Martin & Schwartz, of Chicago, for appellee.

Mr. Justice Wolfe delivered the opinion of the court.

This suit was instituted by the plaintiff to recover damages for the death of its intestate which resulted from an automobile accident while the decedent, Albert Goodman, was riding as a passenger in a car being driven by the defendant, Peter Ancateau. The case was tried before a jury and a verdict for the plaintiff for $7,500 was returned. The defendant moved for a new trial, which was overruled. Judgment was entered on the verdict, to reverse which this appeal is prosecuted.

The defendant, his brother, and Albert Goodman and three other boys lived in the same neighborhood in the western part of Chicago and attended high school at 47th and Union streets. On the morning of the accident, December 20, 1940, the defendant and his brother left their home about 7:30 o'clock in their father's Tudor Ford Sedan for school. The defendant, a boy 19 years of age, was driving the car. They made several stops on the way and picked up Albert Goodman and three other boys. After arriving at the school, five of the boys decided not to attend school that day, but go for a drive. One of the boys in the car got out and went to school, and another boy took his place in the car. After driving in the city for some time, the plaintiff drove the car westerly on U. S. Highway No. 34, which is an extension of Ogden avenue.

About 9:30 o'clock the defendant was driving the car toward the west on the highway in the country a few miles west of Hinsdale. The highway had four driving lanes paved with concrete. The pavement at the time was wet, owing to a drizzle, but the rain did

not obscure vision, nor cloud the windshield of the car. At this time, and near the place mentioned, Jack Stancy was driving his truck west in the north lane of the highway. The truck was loaded with eight tons of steel and going about 17 miles an hour. A passenger car was being driven on the same highway and approaching the rear of the truck. The identity of the driver of this passenger car has never been ascertained. The defendant was approaching the two vehicles and it was his purpose to pass them.

The driver of the passenger car turned his car from the north lane into the passing lane south of the truck and passed the truck in safety. As the passenger car turned into the passing lane, the defendant arrived near the two vehicles and endeavored to pass them. At that moment, one W. C. Cavens, was driving a Buick automobile toward the east in the south lane of the highway and approaching the place where the defendant attempted to pass. The defendant's car skidded sidewise across the highway, and collided with the Buick car driven by Cavens.

At the time of the collision, two boys, Thomas Payton and Richard Walker, were seated in the front seat with the defendant. Bert Goodman and two boys were seated on the rear seat, Goodman on the right hand side of the car. The place of impact on the defendant's car was the rear right side, and as a result of the force of the collision, the three boys in the rear seat were killed.

One charge of the complaint, under the ''Guest Statute,'' is substantially as follows: The defendant wilfully and wantonly and with utter and reckless disregard for the rights and safety of others, drove his automobile on a wet and slippery pavement at a speed greater than was reasonable and proper, having regard to the traffic and the use of the way, and at a speed which endangered the life and limb of the persons lawfully present at the time and place, contrary to the

provisions of Article VI, paragraph 49, subdivision A, of the Uniform Act Regulating Traffic on Highways, being section 146 of chapter 95½, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 85.178]; so that by reason thereof, the automobile so driven by the defendant, was caused to come in violent contact with the automobile of W. C. Cavens, whereby, the plaintiff intestate was injured, etc. The plaintiff tried the case on the theory that this charge of the complaint was proved by him by a preponderance of the evidence.

It is assigned as error by the defendant that the verdict is against the law and the evidence. It is urged by the defendant that the plaintiff did not prove by a preponderance of the evidence, that the defendant was guilty of wilful and wanton misconduct, as alleged in this charge of the complaint.

The law is, that a verdict will not be set aside in this court as being against the weight of the evidence, unless it is against the manifest weight of the evidence. (*Corcoran v. City of Chicago*, 373 Ill. 567.) In suits at law, where there is a conflict in the testimony, it is for the jury to weigh and determine the evidence admitted by the court as competent. (*Mirick v. T. J. Forschner Contracting Co.*, 312 Ill. 343; *Phillabaum v. Lake Erie & W. R. Co.*, 315 Ill. 131.) The above cases make it clear that a reviewing court is not to infringe on the right of trial by jury by weighing and determining if the plaintiff has proved his case by a preponderance of the evidence. (*Carney v. Sheedy*, 295 Ill. 78.) We do not overlook the rule that where the verdict or decree is clearly and palpably contrary to the weight of the evidence, it is the province and duty of a reviewing court to reverse, but where the evidence is conflicting, that of each party being sufficient, when considered alone, to justify a finding in favor of such party, the rule referred to is not to be applied for the reasons stated in the cases above cited.

The evidence is that, just before the accident, Stancy heard the brakes of a car squeaking and looking into his rear-view mirror saw the passenger car about 50 feet behind him and attempting to pass him. Stancy testified: About 150 feet behind him the defendant's car was going to attempt to pass the second car; "That is, all in the 3d lane and he started to go by and he started to skid broadside across the road, the front end was fairly south and the car coming from the opposite direction; the Ford car skidded into the Buick car. When I first saw the Ford it looked like it was already in the 3d lane." The impact was about 50 feet in front of Stancy's truck. When he first saw the defendant, he was going 50 miles an hour at least; and when the defendant's car skidded, it was going about 40 miles an hour. The road there was level and straight.

Harold Goodlow, a deputy sheriff, testified that he arrived at the place of the accident a short time after it occurred; that the three boys who were alive were taken to a hospital in Hinsdale; that he had a conversation with the defendant, Peter Ancateau at the place of the accident, and again at the hospital. He further testified substantially as follows: I had Peter make a statement at the hospital as to how fast he was going. He was in a room with the Payton boy. I wanted to find out what had happened. Peter claimed they were going between 70 and 80 miles an hour, and that they were racing with a red car. Peter said first he would pass the red car, and then that car would pass him until he got near the place where the truck was, then the red car was supposed to pull over back of the truck; that the red car was following the truck, and he (Peter), was going to pass it. The red car pulled out from behind the truck, and he jammed on the brakes and skidded across the highway into Mr. Caven's car; that he told this story about an hour and a half after the accident; that the defendant ap-

peared all right and to know what he was saying; that he had some bruises on him; that he did not appear to have been treated for shock; that Peter was excited, but he believed he was rational and not under the influence of any drug.

Thomas Payton, aged 16 years, testified that he was "knocked out" by the accident, and that he did not remember about the truck on the highway, nor could he tell the speed of the defendant's car at the time of the accident. He was in the same room at the hospital with the defendant, and that he did not hear any conversation between the defendant and an officer.

Richard Walker, aged 17 years, testified that the defendant was driving about 50 miles an hour before the accident; that he remembered seeing two cars and a truck just before that time; that a dark colored car was behind the truck and a red car was in front of the defendant's car; that the red car was in the second lane, going at about the same speed as they were; that he didn't know how far the various cars were behind each other; that he had no reason to notice that, and after things began to happen, didn't have time; that a red automobile had been traveling along about the same speed they were since they got out of the city; that they passed that car once and it passed them once; that they were traveling behind the red car in the inner lane, and the red car had passed the dark car that was going along the shoulder of the road behind the truck; that just as the red car passed this dark car, the dark car evidently turned out to pass the truck; that the dark car was going only half our speed and pulled shortly in front of us. We went on the other side of the dark car toward the shoulder of the road where the truck was at that time. I do not know if Peter turned the car toward the left, but the car skidded sideways into the third lane.

Objection to the competency of the defendant, as a witness, was waived by the plaintiff, and he testified

on direct and cross-examination. The defendant testified that he did not know if he had a conversation with officers after the accident; that after he came to the hospital, he was dizzy and not feeling normal; that he had a cut on his head; that after an injection in his arm by a doctor, he did not feel much of anything. He denied that he told an officer that he had been driving the car 70 to 80 miles an hour on the morning of the accident, or that he had been racing with another car. He stated that he had not been racing with another car that morning.

Defendant further testified: "I was pretty far behind the truck when I first noticed it as I was driving toward it in the passing lane. I approached the truck and the automobile behind it with caution, and as I got closer to them, I put down the gas to speed up a little more to make a complete pass, and the car behind the truck cut me off, and I put on the brakes. When I put on the brakes, the car skidded and spinned sideways on the wrong side of the road. When the car cut me off, I made an effort to go around it first to the extreme right; the car cut me off going to the left. At the right, it seemed to me I saw trees, and I did not want to hit those trees, so I cut to the extreme left; at the left I would have been running on the wrong side of the road, and it seemed to me there were cars coming against me and I put on the brakes. I made all the effort I could to dodge away. When all this began I was not exceeding fifty miles an hour. I saw that I couldn't make it to the extreme right, and went to the extreme left and tried to get by. I saw that I could not do that either. I went in behind the car and the truck, more toward the car and it was behind it that I put on the brakes. The car behind the truck was in the passing lane, and the truck was on the shoulder lane. I tried to get between the two. As far as I know, only the red car was there with the truck."

It is thus apparent that there is a conflict in the testimony as to the rate of the speed of the defend-

ant's car, and other circumstances before, and at the time of the accident. Failure of an automobile driver to observe the speed law, which prohibits a speed greater than is reasonable and proper, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person, may, or may not establish wilfulness and wantonness according to the rate of speed and the circumstances. (*Balsewicz v. Chicago, B. & Q. R. Co.,* 240 Ill. 238; *Streeter v. Humrichouse,* 357 Ill. 234.)

The evidence favoring the plaintiff and the verdict, standing alone, is, that the defendant was driving a car on a public highway at the rate of speed of 70 to 80 miles an hour before the accident and racing with another car while the concrete pavement was wet and slippery, being aware that other cars were being driven on the highway, and that such cars used the passing lanes on the highway to pass vehicles being then driven on the highway. There is evidence tending to prove that the defendant, under the circumstances existing before, and at the time of his attempt to pass the truck and the car behind the truck, was driving his car at a high rate of speed. Whether his conduct at the time in question was, under the circumstances, wilful and wanton, was a question for the jury. We are unable to say that the evidence, tested as required by the case of *Carney v. Sheedy, supra,* is insufficient to warrant the conclusion reached by the jury and approved by the trial court. We cannot say that the verdict is contrary to the manifest weight of the evidence.

It is also contended by the defendant that the plaintiff failed to prove, by a preponderance of the evidence, that wilful and wanton conduct of the plaintiff's intestate did not proximately contribute to the cause of the accident. The complaint did not allege that the decedent was in the exercise of due care for his own personal safety before, and at the time of the accident. The complaint stated a cause of action.

(*Walldren Express & Van Co. v. Krug,* 291 Ill. 472.)
The defendant, in his answer, alleged that the plaintiff ought not to have recovery herein, because the plaintiff and the plaintiff's intestate were guilty of wilful and wanton conduct, which contributed to the cause of the accident. This allegation of the answer was denied in the plaintiff's reply.

The court, at the request of the defendant, gave instructions numbered 3 and 4, as follows: ''3. The jury is instructed that the plaintiff was held to the same degree of care for his own safety as the defendant in this case, and if you find from the greater weight of the evidence that the plaintiff's intestate was guilty of wilful and wanton conduct at, or just prior to the accident in question, which proximately contributed to the death in question, then and in that case you will find the defendant not guilty.'' ''4. The jury is instructed that for an act to become wilful and wanton under the law, it must be shown by a preponderance or greater weight of the evidence that there is a degree of wilfulness or recklessness, which authorizes a presumption of an intention to injure generally on the person guilty of such act; otherwise there is no authority in law to conclude that such act on the part of the person complained against was either wilful or wanton.'' We are not deciding if these instructions announced correct propositions of law. There was no other instruction given, or offered by the defendant on the legal duty of the decedent for his own safety before, and at the time of the accident. The defendant cannot raise the question of the absence of evidence to establish negligence of the decedent, as his instructions submitted the question of the negligence of the decedent to the jury on the evidence in the case. (*Haynes v. Century Coal Co.,* 171 Ill. App. 83.)

The defendant urges two objections to instruction No. 16, given at the request of the plaintiff, which quoted the charge of the complaint and concluded, ''If

you believe from a preponderance of all the evidence under the instructions of the court that the plaintiff has proved that the defendant was guilty of wilful and wanton conduct, as above set forth, and as alleged in its complaint, and that such wilful and wanton conduct, if any, caused or proximately contributed to cause the accident, injury and death complained of in this case, and you further find from a preponderance of all of the evidence under the instructions of the court that the plaintiff's intestate, Albert Goodman, and the next of kin of the said Albert Goodman, deceased, at, and immediately prior to the accident, referred to above, were free from wilful and wanton conduct which caused or proximately contributed to cause his injury and death, then you should find the issues in favor of the plaintiff." It is contended by the defendant that the instruction is faulty because it does not state (preceding the words of the instruction hereafter quoted), *if you believe from a preponderance of all the evidence* "that such wilful and wanton conduct, if any, caused or proximately contributed to cause the accident, injury and death complained of in this case." The objection is hypercritical. An instruction was given which stated, on questions of fact which the plaintiff was required to prove he must have a greater weight or preponderance of the evidence. The objection is without merit. (*Illinois Cent. R. Co. v. Warriner,* 229 Ill. 91.)

It is next objected that the giving of instruction 16, a peremptory instruction, was reversible error, because it did not state that the jury must find from the evidence that Albert Goodman left him surviving next of kin. The evidence shows that he left surviving him his parents, and it was not a matter of dispute or contest at the trial by the defendant, that he did not leave next of kin. In a case of a surviving parent of a minor child, the law presumes a pecuniary loss for the loss of services to which parent was entitled.

(*Armour v. Czischki*, 59 Ill. App. 17; *City of Chicago v. Hesing*, 83 Ill. 204; *Rockford, R. I. & St. L. R. Co. v. Delaney*, 82 Ill. 198.) Proof that Albert Goodman left next of kin besides his parents would have added nothing to the case, unless it would have been in augment of the damages. (*Boyer v. Northwestern Elevator R. Co.*, 174 Ill. App. 161.) Which, of several persons claiming to be next of kin, are so in fact, and therefore, entitled to the benefit of the judgment and their proportion thereof, is to be determined and settled by the probate court. (*Rockford, R. I. & St. L. R. Co. v. Delaney, supra.*) Proof that the decedent left next of kin was sufficient. (*Conant v. Griffin*, 48 Ill. 410.) Technically, the instruction is faulty and not applicable to peremptory instructions. It is not a ground for reversal that an instruction assumes as proven a fact conclusively established by the evidence without contradiction. (*Illinois Cent. R. Co. v. King*, 179 Ill. 91; *Gerke v. Fancher*, 158 Ill. 375.) It is our opinion that the giving of the instruction was not reversible error.

In the defendant's motion for a new trial, one of the grounds stated therefor was, that the court erred in giving plaintiff's instruction No. 18, on the question of damages, and the instruction is criticized by the defendant in his argument before this court. The instruction is substantially in the language of the statute Injuries Act, and it was not error to give it. (*Deming v. City of Chicago*, 321 Ill. 341.)

The other error relied on that the verdict is so grossly excessive as to clearly evince passion and prejudice against the defendant, and undue sympathy for the plaintiff, is not supported by citation of authorities, nor argued by the defendant in his brief and argument. (*Alexander v. Brewerton Coal Co.*, 258 Ill. App. 281.)

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*