Elizabeth Barrow, Administrator of Estate of Edith Graham, Deceased, Plaintiff, v. John Lence and Gladys Baker, Defendants.
Elizabeth Barrow, Administrator of Estate of Robert Graham, Deceased, Plaintiff, v. John Lence and Gladys Baker, Defendants.

Term No. 57–M–6.

Fourth District.
June 2, 1958.
Released for publication June 30, 1958.

Franklin, Garrison & Bleyer, of Marion, for defendants-appellants.

R. Wallace Karraker, of Jonesboro, for plaintiff-appellee.

PER CURIAM.
This is an appeal from companion cases arising under the same set of facts, to recover damages for the wrongful deaths of Robert Graham and Edith Gra-

ham, contended to have been caused by defendants. Liability was admitted in both cases and only the question of damages was contested. The cases were consolidated and tried together and will be treated together in this opinion. The jury returned verdicts of $12,500 in each of the cases. The verdicts were sustained by the Trial Court.

On appeal in this Court it is contended by defendants that since the decedent, Robert Graham, was 64 years of age and had been unemployed for five years before his death, and was receiving a pension of only $66 per month as his sole income; and since the decedent, Edith Graham, was 61 years of age and was unemployed for about a year and four months before her death, and had an income consisting of a pension of $118 per month; and since the only next of kin of the decedents was an adult daughter, Elizabeth Barrow, plaintiff, who was a married woman, living on a farm with her husband, and who was separately employed and not a direct dependent of her father and mother—that the verdicts cannot be sustained. The only direct evidence of a contribution by the decedents to the daughter was evidence of a gift of $100 to apply on a refrigerator purchase, and gifts of food and small amounts of money from time to time. The evidence also showed that the decedents owned and lived in their own home separate and apart from the daughter and rendered no services to her.

It being demonstrated by the evidence that the daughter was not dependent upon the decedents for support and was receiving no services from them, the remaining element of pecuniary loss to be considered was what amount in all probability the decedents would have added to their estates but for their wrongful deaths. Jury v. Ogden, 56 Ill. App. 100; The North Chicago R. Co. v. Brodie, 156 Ill. 317; The Chicago, Peoria and St. Louis R. Co. v. Woolridge, 174 Ill. 330,

51 N. E. 701; Hudnut v. Schmidt, 324 Ill. App. 548; Wilcox v. Bierd, 330 Ill. 571.

█ Based upon the established pattern of earning capacity of the decedents shown by the evidence, the verdicts are, in our opinion, so excessive as to indicate they were the result of passion or prejudice. Our conclusion in this respect is fortified by the fact that the jury entirely disregarded the evidence in awarding the same amount for the death of the father as the mother. The showing was made that he had not been employed for a period of five years, whereas she had been retired for approximately one year; that he was three years older than she; and that his income was little more than half of hers.

## On Rehearing.

It was contended on behalf of the defendant that there could be no recovery where the evidence shows the next of kin were in no way dependent upon the deceased, and· that this is especially true since the amendment to the Injuries Act hereafter referred to. On the other hand, the plaintiff contended that there is a presumption of loss in the case of lineal kindred. This appeared to present the question whether the so-called presumption is a substitute for evidence, or is conclusive against proof of the actual facts; and the question is also raised whether the amendment to the statute in 1957, hereafter cited, effects a change.

█ Our research indicates that, if the deceased was an adult and the surviving next of kin are all adults, not dependent upon him in any way, there must be an evidentiary basis for the claim of pecuniary loss. But if the deceased was a child, there is a presumption of loss to the next of kin, which is a substitute for evidence. Whether the latter rule is changed by the statute is not before us in this case, and we do not pass upon it. Cases involving children are cited only for the purpose of comparison.

Apparently the first case involving a "presumption of loss" was City of Chicago v. Major, 18 Ill. 349, which involved the death of a minor child. Since the father was entitled to the child's services, the court presumed a loss. Since then the courts have stated added reasons for a presumption in case of death of a minor, among them being the fact that habits of industry and earning power have not yet been established, so that no proof thereof is possible. City of Chicago v. Scholten, 75 Ill. 468; Rockford, R. I. & St. L. R. Co. v. Delaney, 82 Ill. 198; City of Chicago v. Hesing, 83 Ill. 204; Foreman Bros. Banking Co. v. McInerney, 226 Ill. App. 647; Nelson v. Stutz Factory Branch, Inc., 254 Ill. App. 526; Trust Co. of Chicago v. Ancateau, 317 Ill. App. 186.

Another class of cases which present no problem under the statute are those involving the wrongful death of a father who has been supporting his minor children. It is obvious that the loss of their means of support is a "pecuniary loss." These are the ordinary and usual cases which justify substantial damages. The fact that this type of loss is commonly present probably made its absence conspicuous. Some opinions have said, where the deceased had minor children dependent on him, this raises a "presumption of loss." It would seem more accurate to say that proof of these conditions is more than a basis for presumption, rather it is actual proof of loss.

There remain still other cases, like this, in which the next of kin were adult, independent, and receiving no support from the deceased who was also an adult. What evidence can they offer to show pecuniary loss? Apparently, the earliest recognition that this might be a problem is in C. & R. I. Railroad v. Morris, 26 Ill. 400, where the court said: "We can imagine many cases where persons have been for years disconnected and isolated from family connections and in reasonable probability would never render or afford any support

531

to their families or relatives. . . . In case of their death there would be no next of kin who could sustain loss because they could have derived no benefit from the continuance of their lives."

In Conant v. Griffin, 48 Ill. 410, 412, it was held that the statute only provides for compensation for pecuniary loss, not for vindictive or exemplary damages, and the evidence should be confined to pecuniary loss.

However, there arose a line of cases in which, though there was no monetary contribution to support, services had been rendered. It has been developed that services may have a money value which justify compensation for their loss. An early case was C. & W. I. R. R. Co. v. Ptacek, 62 Ill. App. 375, affirmed in 171 Ill. 9. This involved the wrongful death of a widow survived by four *adult* children. Three sons lived with her, in her home, and they paid the cost of keeping the table. The Appellate Court recognized that, since the children were adults and self-supporting, there could be no "presumption" of pecuniary loss. The opinion states the court was "much troubled" by the question of loss, but finally affirmed a verdict after a partial remittitur. On review, the Supreme Court held that the *amount* of damages was subject to final review in the Appellate Court, but passed on the question of law whether there was no evidence of compensable damage, so that only nominal damages should have been allowed. It decided that there was some evidence of services tending to prove that the adult children derived a benefit from their mother's life, so it could not say as a matter of law there could be only recovery of nominal damages.

The concluding part of the last cited opinion stated that damages need not be proved in dollars and cents, but "having proved such kinship as raises a presumption of pecuniary loss, or offered *proof* of loss in cases of collateral kindred or *adult* children, the jury must,

from age, health, etc., fix the damages sustained." (Emphasis supplied.)

We have emphasized the requirement of proof in the case of adult children, because this same case was cited in Hudnut v. Schmidt, 324 Ill. App. 548, in which the court overlooked that part of the opinion, and spoke of a presumption of loss. However, the court did not rely on a presumption, but held that the pecuniary value of the life "can easily be determined by proof of the personal characteristics of the deceased, his mental and physical capacity, his habits of industry and sobriety, his age, the amount of his usual earnings by proof of what he might in all probability earn in the future," etc. There is then cited some of the same cases cited in our original opinion as to the nature of proof required in cases where there is no actual support rendered.

This is the usual pattern of cases involving adults only. Sometimes there is reference to a presumption in favor of lineal next of kin, but always the decisions speak of an evidentiary basis for the fixing of damages, without reliance on any presumption. For this reason, we concluded the so-called presumption has no importance, except in the case of death of a child who has not yet formed habits of industry, nor a pattern of earning ability.

Other cases could be cited to show that proof of services rendered will justify compensation. It is useless in this case, since there is no proof of services rendered. As for "habits of industry," is it to be ignored that the man involved had not been employed for five years? What is to be considered about "usual earnings" when there are none, and the income is limited to small pensions? What probability is there that these people would have earned $25,000 on the facts in evidence?

■ This is a type of case in which a defendant might well feel that prolonging a trial by contesting

liability should be avoided, since the damages must be small. We remain of our previous opinion that the verdicts in this case are so far from any reasonable relation to the evidence, they could only be the result of passion and prejudice. Under these circumstances, it is not only proper but it is the duty of this court to reverse and remand for a new trial.

The defendant's brief herein had raised the point that the 1957 amendment to the Injuries Act was intended to limit recovery to cases of actual dependency. The reference is to the second paragraph of Sec. 2, Chap. 70, Ill. Rev. St., which provides that the amount recovered or obtained by settlement under the act, should be distributed by the court among the next of kin, in proportion to dependency. We had not considered it necessary to a decision in this case, but in view of further argument, the point does appear to have a possible bearing on the result.

■ Accordingly, we revert to our usual course in construing amendments, by considering what possible evils the legislature may have intended to correct. We have all had cases in which distribution according to the law of descent did not appear to be the best or fairest method of distribution. For example: Suppose an unmarried, adult son is the sole support of aged parents, and that he also has a number of brothers and sisters who are in no way dependent upon him, and to whom he contributed nothing. In the event of his wrongful death, the facts would indicate a very substantial damage to the parents, and none to the other next of kin, yet under the law of descent they would all share equally in the recovery. It is easy to imagine a variety of situations with similar import.

It may be observed that the first part of Section 2 above cited remains unchanged. It still provides that the action shall be by the personal representative "for the exclusive benefit of the widow and next of kin of

534

such deceased person," etc. It is not limited to next of kin "who were dependent on the deceased person." The damages recoverable are for compensation "with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person," etc. Again, the damages are not limited to loss of support, nor is the class limited to dependents.

It is true that the elements of damages which come within the term "pecuniary damages" are largely the result of case-made law. The legislature might choose to alter these rules, but if that were intended it would seem the term itself should be amended, or the class of beneficiaries limited. In the absence of any direct indication of that intent, we conclude that the intent is to provide a method of post-trial distribution, after the amount of liability has been determined.

The brief of defendant posed the question, suppose there is a class of next of kin, none of whom were dependent on the deceased, how can there be such a thing as "in proportion to dependency" when there is no dependency? It may be conceded that the wording of the amendment permits argument based on pure mathematical theory, but we would suppose that, if there is no difference in dependency, then all the next of kin would share equally. It remains our opinion that if the legislature intended to eliminate recognized elements of damage, they would have said so, rather than speak only of a change in distribution.

The Appellate Court for the Second District had this statute before it in Rust v. Holland, 15 Ill.App.2d 369, 146 N.E.2d 82. The deceased left minor children whom he had been supporting, and also had children by a prior marriage who had been adopted by others and were not dependent on the deceased. They were excluded from the distribution of the amount recovered. The court did cite Howlett v. Doglio, 402 Ill. 311 and Robertson v. White, 11 Ill.App.2d 177,

both of which were Dramshop cases, in which the argument assumed that there was always a presumption of loss in favor of all lineal next of kin under the Injuries Act, without observing that the cited precedents relied upon an evidentiary basis for support of a verdict, rather than a presumption. This may have led to a misleading statement, but it is our view that the court intended to pass only on the case before it, and did not consider other types of cases.

Defendant at the conclusion of his brief asked that the judgments in this case be reduced by remittitur. In the petition for rehearing the plaintiffs also suggest that they be given the option of remittitur or new trial. Since liability is admitted, there is much compulsion for putting this litigation to an end if possible. Accordingly, if the amounts are reduced to $2,000 in the case of Robert Graham and $4,000 in the case of Edith Graham by appropriate remittitur, these amounts will be approved. We regard these amounts as high based upon the evidence in the record but are of the opinion that verdicts in these amounts would not be disturbed.

Remittiturs required, otherwise reversed and remanded for new trial.